[Crim. No. 12984.   Second Dist., Div. Four.   Mar. 8, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES FRED GRAY, Defendant and Appellant.

C. Ransom Samuelson and Harry Moss for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—A jury convicted defendant of the offenses of kidnaping (Pen. Code, § 207) and forcible rape (Pen. Code, § 261, subd. 3). The trial court sentenced defendant to state prison on the rape count. Since the two offenses arose out of a single course of action, the execution of the sentence for kidn ping was suspended. to avoid the double punishment prohibited by Penal Code section 654. (See *In re Wright*, 65 Cal.2d 650. 655, fn. 4 [56 Cal.Rptr. 110, 422 P.2d 998], approving this procedure.)

This appeal is from the judgment. The notice of appeal also refers to the denial of the motion for a new trial, which is not an appealable order. (Pen. Code, § 1237.)

The victim, a Mrs. Bowman. aged 47, testified that she had met defendant at a party about three weeks before the offenses were committed. On the evening they met, Mrs. Bowman drove defendant to his home, went in with him, and enjoyed coffee and doughnuts. Another evening they spent together in Mrs. Bowman's apartment.

On Saturday evening, October 30, 1965, Mrs. Bowman went by herself in her own automobile to a Halloween costume party, at the invitation of a man she considered engaged to marry her.

Defendant was also a guest at the party.

About 11 p.m. Mrs. Bowman became upset because her host was devoting his attention to "a blonde," so Mrs. Bowman departed in her own car accompanied by defendant. They stopped at a bar, where they stayed for an hour, following which they proceeded to defendant's residence. What happened thereafter is the main issue of fact in the case.

Mrs. Bowman's testimony is in substance: Defendant demanded that she come into the house with him and when she refused, he beat her with his fists, then grabbed her hair and pulled her out of the car onto the pavement. She does not remember how she got into the house. She found herself in the living room, whence defendant forced her into the bedroom, pulled off her clothes, and threw her on the bed. There he beat her, pulled out her hair and accomplished three or four acts of intercourse during the ensuing two hours. When defendant fell asleep she returned to her home and called the police.

Defendant's version is that Mrs. Bowman asked to come into the house to use the bathroom. When he went into the bedroom she followed him and laid on the bed. He told her he "didn't feel like having a party" and went to sleep. Defendant denied using any force upon her at any time and denied that they had had intercourse on this occasion. He testified that they had had intercourse on the previous occasion when he had visited her apartment.

Defendant also testified that when they had been at the bar Mrs. Bowman had appeared to be drunk, and had fallen down; and that she had fallen again in getting out of the car at his house.

The People's case in chief included substantial corroboration of the victim's testimony that she had been severely beaten.

At 3:20 a.m. Deputy Sheriff Harris, on patrol, received a radio report of Mrs. Bowman's complaint and went to her home. She was crying. Her upper lip was swollen and there was discoloration close to her left eye, and swelling and discoloration on her neck. Officers went to defendant's home at about 3:45 or 4 a.m. In the living room they found a piece of material that had come from Mrs. Bowman's costume. Two of her combs and another piece of the costume were near the bed. A broken tooth of a comb and another comb were between the sheets. There were bobby pins on the floor and in the bed.

On Monday, November 1, 1965, Mrs. Bowman went to Dr. Felt for treatment. The doctor testified that at that time she

had bruises about her face, a drooped lip resulting from a bruise on the facial nerve, a bruise on the anterior chest, abrasions on her back, and a loss of some hair in one area, where the follicle had been pulled out.

The conflict in the evidence was for the jury to resolve, and its determination of the factual issues is binding upon this reviewing court. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) Giving credence to the evidence most favorable to the prosecution, and drawing inferences from it, the jury could reasonably conclude that the victim was forcibly transported against her will from the automobile to the defendant's bedroom, and there raped.

Defendant's principal contention on appeal is that the court erred in receiving, on rebuttal, evidence of defendant's conduct on other occasions with three other women. This rebuttal evidence will be summarized.

Mrs. Christian was a divorcee, living with her two children, and, prior to June 3, 1955, had met defendant once when he had visited her home with a mutual friend. At 1:20 a.m. on June 3, 1955, she was awakened by defendant's knocking on her door. According to her testimony, when she answered the door defendant said a gang was after him, and persuaded her to admit him. Defendant proposed that they go upstairs and make love. After Mrs. Christian refused, he took her in his arms, then struck her with a water jug, knocking her unconscious. He also choked her, blackened her eyes, pulled her hair and stabbed her with a knife. Because of this alleged conduct defendant was prosecuted upon a charge of assault with intent to commit murder and acquitted.

Mrs. Alexander testified that she had asked defendant about Mrs. Christian's charges and he had said they could not prove it as it was dark, and that at some other time he would tell her all about it.

The deputy sheriff who had investigated the assault on Mrs. Christian testified that he had examined defendant's hands immediately after the incident and had found the palms covered with hairline scratches or shallow cuts.

The second episode involved Mrs. Neal who, at the time referred to in her testimony, was defendant's mother-in-law. She testified that in April 1964, between 2 a.m. and 3 a.m., defendant telephoned her and then came to her residence. Mrs. Neal was wearing a nightgown and robe. Defendant pulled up her clothes, but left the premises when Mrs. Neal threatened to scream.

The third episode involved Mrs. Neal's daughter Sherry, who was married to defendant from 1962 to 1964. Sherry testified that in June 1962, two weeks prior to their marriage, she went to a party with defendant, and afterwards drove him to his home in her car. Defendant then dragged her out of the car, and into his bedroom. There he pulled her hair, beat her head against the bed posts and struck her with his fists. He was attempting to take her clothes off, but stopped when his mother came into the bedroom.

After this rebuttal evidence had been received, defendant again took the witness stand and denied that he had ever been in Mrs. Christian's home or that he had done any of the things she had related; and he denied that he had ever raped or attempted to rape the other two women.

He also testified that he had been having intercourse with Sherry for about a year prior to the time she referred to.

The rule governing admissibility of evidence showing collateral offenses has recently been stated in *People* v. *Cramer,* 67 Cal.2d 126, 129-130 [60 Cal.Rptr. 230, 429 P.2d 582]:

"It is settled that evidence of other crimes is ordinarily admissible where it tends to show presence of a common design, plan, or *modus operandi,* and we recently recognized in *Kelley, supra* [66 Cal.2d 232 (57 Cal.Rptr. 363, 424 P.2d 947)], that this rule applies to sex offenses committed with persons other than the prosecuting witness. We there pointed out that, although charges of sex offenses are often unreliable and particularly difficult to disprove, such evidence is admissible as showing a common scheme or plan where the offenses are not too remote, are similar to the offense charged, and are committed with persons similar to the prosecuting witness. (*People* v. *Kelley, supra,* 66 Cal.2d 232, 239-243.)

"Several decisions have held that the test of admissibility of evidence of another offense offered to prove common design, plan, or *modus operandi* is whether there is some clear connection between that offense and the one charged so that it may be logically inferred that if defendant is guilty of one he must be guilty of the other. Or as the matter is sometimes stated, the other offenses offered to prove pattern, scheme, or plan are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the defendant committed the other acts he committed the act charged."

In *People* v. *Cavanaugh,* 44 Cal.2d 252, 265-266 [282 P.2d 53], the court said: "In this connection it should be observed

that, while it is often said that evidence of similar crimes is relevant to show plan, scheme, system, or design, this is not to be understood as meaning that such evidence is admissible only if it tends to show premeditated, calculated design; it also is relevant and may be admissible where, as here, it tends to show that defendant was guilty of the crime charged by showing a peculiar or characteristic behavior pattern of defendant which is manifest in the conduct of the transgressor in both crimes.''

In the case at bench the relevance of the collateral offenses becomes apparent upon an analysis of the record at the time the evidence was offered. Here the narrow factual issue was whether defendant had used force to get Mrs. Bowman into his bed, or whether she had proceeded voluntarily, as he claimed. The victim was a mature, sophisticated woman, who, by her own testimony had not hesitated to be alone with defendant in his apartment and in hers on other occasions. Defendant testified that he had slept with the woman in her apartment the second time they had been together. The defense elicited the testimony of the married man Mrs. Bowman referred to as her ''fiancé'' that he had had intercourse with her the second time he saw her, and that she had visited his apartment frequently thereafter. The tenor of the defense was to point up the improbability that defendant would have resorted to force with this woman.

The rebuttal evidence showed a pattern of sudden violent post-midnight attacks upon female acquaintances. The assault upon Mrs. Christian appears to have been an attempted rape in which he pulled the victim's hair and beat her into unconsciousness with his hands, and pulled off her clothes, as in the alleged rape of Mrs. Bowman. The incident with Mrs. Neal, though brief, may be interpreted as a first step towards the same kind of thing. The attack upon defendant's fianceé, Sherry, involved an even closer parallel with the offense charged. Sherry, like Mrs. Bowman, was a woman who, according to defendant, had engaged in voluntary intercourse with him in the past. When Sherry drove him to his home, defendant dragged her out of the car and into his bedroom, beating her with his fists and pulling at her clothes, until interrupted.

These collateral events tend to show the same peculiar and characteristic behavior pattern which is manifested in the crime charged, and thus make it more probable that Mrs. Bowman was telling the truth about what had happened to

her. Defendant's behavior pattern tends to rebut the defense theory that the attack described by Mrs. Bowman was too senseless to be credible.

The fact that defendant had been prosecuted and acquitted upon a charge of assault with intent to murder Mrs. Christian does not make the evidence of that assault inadmissible. (*People* v. *Griffin*, 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507].)

Defendant argues that evidence of collateral offenses, if admissible at all, is a part of the People's case in chief; and he invokes the principle that it is unfair for the prosecution to withhold portions of its main case for use in rebuttal, citing such authorities as *People* v. *Carter*, 48 Cal.2d 737, 753 [312 P.2d 665], and *People* v. *Rodriguez*, 58 Cal.App.2d 415, 418 [136 P.2d 626].

It is true that in many cases evidence of collateral offenses has been held admissible as a part of the People's case in chief. But other decisions have recognized that the conduct of the defendant on collateral occasions may be shown in rebuttal if it becomes relevant by reason of the matters brought out by the defense. (See, e.g., *People* v. *Pike*, 58 Cal.2d 70, 92 [22 Cal.Rptr. 664, 372 P.2d 656]; *People* v. *Sylvia*, 54 Cal.2d 115, 122 [4 Cal.Rptr. 509, 351 P.2d 781]; *People* v. *Wein*, 50 Cal. 2d 383, 406 [326 P.2d 457]; *People* v. *Westek*, 31 Cal.2d 469, 476 [190 P.2d 9].)

"The order of proof rests largely within the discretion of the trial court." (*People* v. *Pike*, *supra*, at p. 93.) In the case at bench the trial court first heard the testimony of Mrs. Christian outside the presence of the jury to determine whether it could be deemed proper rebuttal. After hearing the arguments of counsel and examining the authorities the court decided to receive that line of evidence. It does not appear now that there was an abuse of discretion, or that defendant was prejudiced by the fact that the evidence came in on rebuttal rather than earlier.

One defect in the form of the judgment must be remedied. The minutes for June 28, 1966, when the court sentenced defendant, contain this recital: "Issue of determination of whether Defendant is a mentally disordered sex offender is submitted on doctor's reports. The Court finds Defendant is a mentally disordered sex offender."

It does not appear that any proceedings were ever commenced under section 5500 et seq. of the Welfare and Institutions Code for the civil commitment of defendant as a

mentally disordered sex offender, or that the criminal proceeding was adjourned as contemplated by section 5501 of that code. The possibility of such a civil proceeding was discussed by the court with counsel, and defendant was examined by court-appointed psychiatrists, who filed reports with the court, but the matter went no farther.

Without compliance with the procedures prescribed by the Welfare and Institutions Code, the court had no jurisdiction to declare that defendant was a mentally disordered sex offender. Thus the recital to that effect in the judgment must be deleted. (*People* v. *Succop,* 67 Cal.2d 785, 790 [63 Cal.Rptr. 569, 433 P.2d 473].)

At oral argument, counsel agreed that in this case there had been no proceeding at all under the Welfare and Institutions Code. The psychiatrists' reports were, in effect, supplements to the probation report. In a case of this kind, unlike one in which a child under 14 is involved, such civil commitment proceedings are optional with the court (Welf. & Inst. Code, § 5501). Since the court did not see fit to initiate such a proceeding, and since defendant is not seeking one, it is not necessary to remand the case to the superior court as was done in *Succop.*

The appeal from the order denying a new trial is dismissed. The judgment is modified by striking therefrom the recital that defendant is a mentally disordered sex offender, and as so modified, it is affirmed.

Jefferson, J., and Kingsley, J., concurred.