**STATE of Iowa, Appellee,**

v.

**Kevin Ray PLASTER, Appellant.**

**86–1632.**

Supreme Court of Iowa.

May 11, 1988.

Charles L. Harrington, Appellate Defender, and Michael J. Laughlin and B. John Burns, Asst. Appellate Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., William E. Davis, Co. Atty., and James L. Ottesen, Asst. Co. Atty., for appellee.

LAVORATO, Justice.

Kevin Ray Plaster was convicted of third-degree sexual abuse for acts arising out of initially consensual sexual activity. *See* Iowa Code § 709.4 (1985). He appealed, arguing that prejudicial testimony concerning a similar incident with a different woman was improperly admitted into evidence and that the evidence was insufficient to warrant a guilty verdict. We transferred the case to the court of appeals, and it upheld the district court's evidentiary ruling and the conviction. Upon further review we likewise find no error and affirm.

Plaster met the complainant, Christine, in a laundromat one evening in June 1986. At his suggestion they went to a bar, where they drank alcoholic beverages for about two hours. They then decided to go to his apartment. Christine later testified that she assumed they would probably engage in sexual activity there.

After they had disrobed and performed oral sex, Plaster put his fingers into Christine's vagina and manipulated it very vigorously. According to Plaster, other women had found such manipulation pleasurable. It caused Christine pain, however, and she told Plaster to stop. When he did not, she had to pull herself away from him. Christine still felt pain after the manipulation ceased, and she saw that she was bleeding as a result of it. Because she was upset, Plaster tried to calm her.

Later, Plaster attempted to engage Christine in sexual intercourse. When she refused, Plaster allegedly told her he would "use his hand again" if she did not agree. They then had intercourse. Christine left the apartment about two hours later, although Plaster had invited her to spend the night.

When Christine returned home, she told her roommate, Susan, that she had been injured by Plaster. Susan, seeing that Christine was upset, called a rape crisis center for her and drove her to a hospital.

At the hospital Christine was examined by Dr. Dean Ehrecke and Dr. Donald Heming. They found lacerations in her vagina

and the surrounding area, and both doctors testified that such injuries would have been very painful. Dr. Ehrecke noted the injuries were consistent with Christine's statement to him that "she had been assaulted with a fist into the vagina."

Because he had allegedly forced Christine to have intercourse after the hand manipulation, Plaster was charged with third-degree sexual abuse. *See* Iowa Code § 709.4. Before trial he made a motion in limine, seeking to exclude testimony concerning a woman whom he had injured in a similar way two years earlier. *See* Iowa R.Crim.P. 10(2); Iowa R.Evid. 104(a). Plaster argued that the probative value of such testimony would be outweighed by its prejudicial effect, *see* Iowa R.Evid. 403, and that the testimony would not fall within the exceptions to the prohibition against admitting evidence of other wrongs, *see* Iowa R.Evid. 404(b).

The district court denied the motion, broadly ruling that "evidence of a similar incident by [Plaster] with a different victim ... would be relevant, material, and admissible evidence of motive, opportunity, intent, preparation, plan, identity, knowledge, or absence of mistake or accident."

At trial Melissa, the woman who had been similarly injured by Plaster, and her physician, Dr. Eugene Kerns, testified about the earlier incident and its result. Melissa stated that during consensual sexual activity with Plaster, he had vigorously manipulated her vagina with his hand, causing her to bleed. Despite Melissa's request that he stop, Plaster continued the manipulation for some time.

Afterward, Melissa went into the bathroom to shower. Plaster followed her and, according to Melissa, forced her to perform oral sex against her will. Dr. Kerns, who examined Melissa after the incident, testified that Plaster's manipulation had caused bruises and a laceration of Melissa's vagina.

At the close of testimony the district court denied Plaster's motion for a judgment of acquittal, ruling that the evidence was not insufficient regarding lack of consent. *See* Iowa R.Crim.P. 18(8). The jury then found him guilty of third-degree sexual abuse. *See* Iowa Code § 709.4. After denying his motion for a new trial, the court sentenced Plaster to a period of incarceration not to exceed ten years, *see id.* at §§ 902.3, 902.9(3).

Plaster appealed, arguing that testimony concerning the incident with Melissa was improperly admitted and that his conviction was supported by insufficient evidence. We transferred the case to the court of appeals, which upheld the district court's evidentiary ruling and the conviction. Plaster's contentions are now before us for further review.

I. *Evidence of Prior Sexual Abuse Toward One Other Than the Victim.*

Plaster contends the district court erred in permitting Melissa's testimony about his prior sexual conduct toward her and in permitting Dr. Kerns' testimony about the treatment of her injuries resulting from that conduct. In support of his contention, Plaster argues that the testimony was not relevant because it did not fall within any of the recognized exceptions in rule 404(b) of the Iowa Rules of Evidence. He further argues that even if the testimony was relevant, its probative value was outweighed by the unfair prejudice generated by its admission.

The State insists the evidence was relevant on the hotly contested issue of force or lack of consent. Because the testimony was relevant, the State argues that the district court properly exercised its discretion in admitting it.

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The purposes listed in the rule are not exclusive. *State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987); 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[08], at

404–56—57 (1986). The key is "whether the challenged evidence is relevant and material to some legitimate issue other than a general propensity to commit wrongful acts." *Barrett*, 401 N.W.2d at 187; *accord* 2 *Weinstein* ¶ 404[08], at 404–52. If the evidence meets this litmus test, "it is prima facie admissible, notwithstanding its tendency to demonstrate the accused's bad character." *Barrett*, 401 N.W.2d at 187.

■ In determining whether evidence of "other crimes, wrongs, or acts" is admissible, the trial court must employ a two-step analysis. The court must first decide whether the evidence is relevant. If the court finds that it is, the court must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *State v. Kern*, 392 N.W.2d 134, 136 (Iowa 1986); Iowa R.Evid. 403. A positive finding as to the second step overcomes the evidence's prima facie admissibility. *Barrett*, 401 N.W.2d at 187 n. 2.

In the process of employing the two-step analysis, the trial court must exercise its discretion. We will reverse its decision only when we find a clear abuse of discretion. *Kern*, 392 N.W.2d at 136.

■ A. *Relevancy.* Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R.Evid. 401. The test is "whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if he knew of the proffered evidence." 1 *Weinstein* ¶ 401[07], at 401–48.

The consequential fact here is whether Christine consented to the sexual intercourse following Plaster's hand manipulation of her vagina. Is the likelihood that Plaster did not have Christine's consent enhanced by evidence of past sexual abuse toward another in similar circumstances?

Various courts have grappled with the question whether evidence of past sexual abuse toward another is relevant to the issue of the victim's consent. These courts have utilized various analyses and have come to different conclusions. A number of these cases are collected in an exhaustive annotation on the subject. *See* Annotation, *Admissibility, In Rape Case, Of Evidence That Accused Raped Or Attempted To Rape Person Other Than Prosecutrix*, 2 A.L.R.4th 330, 374–80 (1980). We think a discussion of several of these cases would be helpful to our analysis.

In *People v. Gray*, 259 Cal.App.2d 846, 66 Cal.Rptr. 654 (1968), the defendant was convicted of kidnapping and rape. The victim, a 47–year–old woman, testified the defendant forced her into his apartment, pulled her clothes off, beat her, and accomplished three or four acts of intercourse during a two-hour period. Prior to this incident, the victim had been in the defendant's apartment on one occasion and he in hers on another. The defendant admitted the sexual intercourse but claimed it was consensual.

On rebuttal, three women testified that the defendant, prior to this incident, had beaten them in a similar manner and attempted to rape them. The defendant knew all three and, in the case of one, had previously engaged in consensual intercourse. The defendant testified that he had also had intercourse with the victim before. The tenor of the defense was to point up the improbability that the defendant would have resorted to force with the victim. Rejecting the defendant's contention that the testimony of the other three women had been erroneously admitted, the court reasoned that

[t]hese collateral events tend to show the same peculiar and characteristic behavior pattern which is manifested in the crime charged, and thus make it more probable that [the victim] was telling the truth about what happened to her. Defendant's behavior pattern tends to rebut the defense theory that the attack described by [the victim] was too senseless to be credible.

*Id.* at 852–53, 66 Cal.Rptr. at 657; *accord People v. Crisafi*, 187 Cal.App.2d 700, 707, 10 Cal.Rptr. 155, 159 (1960).

In *Youngblood v. Sullivan,* 52 Or.App. 173, 628 P.2d 400 (1981), the defendant was convicted of rape and sodomy. The defendant admitted the sexual acts but also claimed they were consensual. The state, on rebuttal, put into evidence the testimony of another woman who testified she had been attacked by the defendant in a similar fashion and in a similar locale about a month prior to the attack on the victim. The court, utilizing an analysis slightly different from that in *Gray,* found the evidence relevant and admissible:

> Even though modus operandi is usually used to establish identity, we conclude the evidence is admissible here to show a modus operandi which rebuts the defense of consent. . . . The evidence in this case of the other crime and of the crime defendant is charged with established that defendant committed those acts in a way so unique as to constitute a signature. . . .
>
> The evidence of the other crime is probative on the issue of consent. Defendant's story that the victim in this case *consented* tends to be rebutted by evidence that defendant has had a *nonconsenting* encounter with another person in this strikingly singular way.

*Youngblood,* 52 Or.App. at 177–78, 628 P.2d at 402 (citation omitted).

The cases reaching conclusions contrary to those in *Gray* and *Youngblood* simply reason that consent is unique to the individual. Under this line of reasoning, the fact that one woman was raped has no tendency to prove that another woman did not consent. *See, e.g., State v. Alsteen,* 108 Wis. 2d 723, 730, 324 N.W.2d 426, 429 (1982). Thus, according to these courts, prior similar acts are not relevant on the issue of consent.

We have long followed the rule allowing evidence of prior acts with the victim. *See, e.g., State v. Spaulding,* 313 N.W.2d 878, 880 (Iowa 1981); *State v. Maestas,* 224 N.W.2d 248, 250 (Iowa 1974); *State v. Rankin,* 181 N.W.2d 169, 171 (Iowa 1970); *State v. Kinkade,* 241 Iowa 1259, 1261–62, 43 N.W.2d 736, 738 (1950); *State v. Neubauer,* 145 Iowa 337, 345–46, 124 N.W. 312,

315 (1910). The rationale for admitting such evidence is that it shows a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial. *Spaulding,* 313 N.W.2d at 880.

In *Spaulding* we extended the rule to include prior acts with a person other than the victim. 313 N.W.2d at 881. There the defendant was convicted of sexual abuse of his fifteen-year-old stepdaughter, with whom he had been having sexual relations for five years. Over the defendant's other-crimes objection, the district court allowed the victim to testify about the prior relations. Over the same objection, the court also permitted the victim's seventeen-year-old sister to testify about the defendant's sexual conduct with her that had occurred in between the two incidents of sexual intercourse upon which the current charge was based. The sister testified that the defendant had come into her bedroom and held her down while he masturbated on her stomach. Finding no abuse of discretion in admitting the testimony of either witness, we reasoned that the older sister's testimony

> related an act occurring between the two involving her younger sister. It gave considerable credence to the victim's story and tended to contradict the defendant's claim that the victim may have dreamed the occurrence.

*Spaulding,* 313 N.W.2d at 881–82.

We think the analysis in *Gray, Youngblood,* and *Spaulding* is persuasive.

The tenor of Plaster's defense is that Christine's claim of lack of consent is too senseless to be true. To support his theory, Plaster placed heavy reliance on consensual sexual activity between the couple before the act in question and her friendliness toward him afterward.

Plaster's prior sexual conduct toward Melissa tends to show the same peculiar and characteristic behavior pattern manifested in the crime charged; consequently, such conduct makes it more probable that Christine was telling the truth. Plaster's behavior pattern tends to rebut his consent theory of defense. *Cf. Gray,* 259 Cal.

App.2d at 852–53, 66 Cal.Rptr. at 657; *Spaulding,* 313 N.W.2d at 881–82.

Although identity is not at issue here, we think that Plaster's modus operandi also tends to rebut his consent defense.[1] *Cf. Youngblood,* 52 Or.App. at 177, 628 P.2d at 402. Modus operandi is "'a distinct pattern or method of procedure thought to be characteristic of an individual criminally and habitually followed by him.'" *Id.* at 177–78, 628 P.2d at 402 (quoting *Webster's New International Dictionary* (3d ed. 1976)).

The evidence shows a striking similarity between the circumstances surrounding the sexual abuse charged and the sexual abuse of Melissa. Both acts occurred in Plaster's apartment. Both acts occurred following admittedly consensual sexual activity. Plaster hand-manipulated the vaginas of both women. In each instance he was told to stop but did not do so. Both women suffered similar injuries as a result of the manipulation. In each instance Plaster forced the women to participate in a sex act following the injury. Plaster's actions in each instance are "so unique as to constitute a signature." *Youngblood,* 52 Or. App. at 178, 628 P.2d at 402. His testimony that Christine consented to the sex act in question "tends to be rebutted by evidence that he [had] had a *nonconsenting* encounter with another person in this strikingly singular way." *Id.*

We think the challenged evidence rebuts Plaster's consent defense for still another reason. The nature and extent of Melissa's injuries were well known to Plaster. Possessed of this special knowledge, Plaster would be unlikely to mistake Christine's actions immediately following his hand manipulation as consent to sexual intercourse, especially in light of her complaints of pain. *Cf. State v. Iaukea,* 56 Hawaii 343, 352, 537 P.2d 724, 731 (1975) (defendant was aware of victim's knowledge of his past history of attacks on women, which explained her lack of resistance and which

made it unlikely that he would have construed her actions as consent).

Finally, Plaster's knowledge that his hand manipulation might result in injury and pain would tend to corroborate Christine's testimony that Plaster threatened to use his hand again if she did not consent to sexual intercourse.

We conclude that in the circumstances of this case, the other-crime evidence together with Dr. Kerns' corroboration of injury was relevant to rebut Plaster's consent defense.

■ B. *Unfair prejudice.* Having concluded that the testimony of Melissa and Dr. Kerns was relevant, we must now decide whether the probative value of such testimony was substantially outweighed by the danger of unfair prejudice. *See* Iowa R.Evid. 403. An affirmative finding in this balancing process precludes admissibility of even relevant evidence. *See id.*

Whereas "relevancy" is the tendency to make a consequential fact more or less probable, "probative value" gauges the strength and force of that tendency. 1 G.P. Joseph & S.A. Saltzburg, *Evidence in America* ch. 13, at 2 (1987). "Unfair prejudice" in Federal Rule of Evidence 403 has been defined as "an undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one." Fed.R.Evid. 403 advisory committee's note. We find this definition appropriate for our own rule 403, which mirrors the federal rule.

Rule 403 does not provide protection against all evidence that is prejudicial or detrimental to one's case; it only provides protection against evidence that is *unfairly* prejudicial. *See Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir.1980); 1 *Weinstein* ¶ 403[03], at 403–29. Thus, evidence that

> appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action may cause a jury to base its decision on something other than the established propositions in the case.

---

1. Modus operandi is usually used to establish identity. *Youngblood,* 52 Or.App. at 177, 628

P.2d at 402.

The appellate court may conclude that "unfair prejudice" occurred because an insufficient effort was made below to avoid the dangers of prejudice, or because the theory on which the evidence was offered was designed to elicit a response from the jurors not justified by the evidence.

1 *Weinstein* ¶ 403[03], at 403–33—40.

The complaining party has the burden of establishing that the trial court abused its discretion in the balancing process under rule 403. *State v. Cott*, 283 N.W.2d 324, 329 (Iowa 1979).

As applied to other-crimes evidence, one commentator suggests

balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.

*McCormick on Evidence* § 190, at 453 (E. Cleary 2d ed. 1972).

Our review of the record convinces us that the incident involving Melissa occurred as she described it. Plaster admits that he manipulated her vagina and, in the process, injured her. He also admits that the sex act she described took place following the manipulation. He only disputes, as he does in this case, that the sex act was done without her consent.

We have previously demonstrated the highly probative value of this other-crime evidence in rebutting Plaster's defense of consent.

Our close reading of the record convinces us that there was a need for such evidence in the light of the consent issue and the other evidence available to the prosecution. As we mentioned earlier, Christine's admission of prior consensual sexual activity with Plaster, coupled with her friendliness toward him following the alleged forcible sex act, gave considerable credence to his

consent defense. It was, at this point, his word against hers.

In addition, without such other-crime evidence, Plaster could convincingly argue that he was not aware that Christine was injured and in pain. His testimony that other women enjoyed such vaginal manipulation would support this argument. He could create a scenario for the jury that he mistakenly perceived Christine's acquiescence as consent rather than a result of her fear of being further injured by his continued physical manipulation of her vagina. The challenged evidence was necessary to dispel these inferences supporting Plaster's consent defense.

That leaves for our consideration the degree of emotion the evidence would rouse in the jurors' minds. Was it reasonably apparent to the district court that the jury would convict Plaster solely because of it? Admittedly, the district court made a judgment call on this question. But that is exactly what the court does in exercising its discretion in the balancing process. *See, e.g., Cott*, 283 N.W.2d at 329 (to establish that the district court abused its discretion, the complaining party must show the court's action was unreasonable in the light of attendant circumstances); *McCormick* § 190, at 453 ("Such a balancing calls for a large measure of individual judgment about the relative gravity of the imponderables. Accordingly, some opinions stress the element of discretion.").

Here, the district court, with a cautionary instruction, very carefully explained the purpose of the challenged evidence as it related to the issue of consent and admonished the jury that it must not convict Plaster because of this evidence. It is only in extreme cases that such an instruction is deemed insufficient to nullify the danger of unfair prejudice. *State v. Conner*, 314 N.W.2d 427, 429 (Iowa 1982). This is not one of those cases. Moreover, we cannot assume the jury failed to follow the court's instruction. *See Shawhan v. Polk County*, 420 N.W.2d 808, 811 (Iowa 1988).

For all these reasons, we conclude the probative value of the challenged evidence

outweighs the danger of unfair prejudice to Plaster. On this record we cannot say the district court acted unreasonably in light of the attendant circumstances. In short, the court did not abuse its discretion in admitting the challenged evidence.

II. *Sufficiency of the Evidence of Lack of Consent.*

■ Plaster contends the evidence is insufficient to establish lack of consent. In support of this contention he argues that his chance meeting with Christine began with casual conversation and progressed to consensual sexual activity. He argues further that she offered no resistance to the sexual intercourse forming the basis of the charge against him, stayed several hours after it, and even gave him her telephone number prior to leaving. He concludes these actions are not those of a "nonconsenting young maiden whose virtue the State would argue was debauched by the amorous overtures of an, admittedly, sexually active young male."

Iowa Code section 709.4(1) defines sexual abuse in the third degree as

[a]ny sex act between persons who are not at the time cohabitating as husband and wife ... when the act is performed with the other participant ...:

   1. ... by force or against the will of the other participant.

Whether the sex act is performed by force or against the will depends upon all the circumstances surrounding the act, both subjective and objective. *State v. Bauer*, 324 N.W.2d 320, 321–22 (Iowa 1982) (in prosecution for sexual abuse, complainant's testimony that her fear rendered her incapable of protest or resistance was sufficient to sustain finding that sex act was committed by force or against her will).

Christine's testimony shows she withdrew her consent after Plaster's hand manipulation of her vagina and explains why she acquiesced in his demand for more sex:

[T]he next thing I remember is [that Plaster] got on top of me and he told me that he wanted to have sex, and I said, no, I didn't want to because I really hurt and I just said no.... He said that if I didn't lift up my legs, that he would use

his hand again on me because he wanted to have sex with me, and I told him no and—.... Well, I agreed to [the sexual intercourse] because I was afraid if I didn't that he would hurt me some more, so I went along with what he wanted and we had intercourse after that and I just —I just laid there kind of crying—I didn't want it at all. I wanted to go home.

Christine explained that her actions following this last encounter resulted from her fear that Plaster would harm her if she said something wrong or acted in a hostile way toward him.

Admittedly the evidence was conflicting. The jury, however, was free to believe Christine's version of what happened and to reject Plaster's. *See State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984).

After reviewing the evidence in the light most favorable to the verdict, as we are required to do, we are convinced there is substantial evidence to support the jury's determination that the sexual intercourse in question was with force or against the will of the victim. *See id.* at 418–19.

III. *Disposition.*

The district court properly exercised its discretion in admitting other-crime evidence and properly overruled Plaster's motion for judgment of acquittal for lack of sufficient evidence on the issue of consent. Finding no error, we affirm.

DECISION OF THE COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.

All Justices concur except SCHULTZ, CARTER, and ANDREASEN, JJ., who dissent.

SCHULTZ, Justice (dissenting)

In Iowa, evidence of a defendant's prior acts is inadmissible when offered to prove that the defendant has a bad character and is therefore likely to have committed the crime with which he is presently charged. *State v. Spargo*, 364 N.W.2d 203, 208 (Iowa 1985); *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979); Iowa R.Evid. 404(b) ("Evi-

dence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.") Evidence of prior acts may be offered for other proper purposes, such as proving the identity, preparation, intent or knowledge of the defendant. Iowa R.Evid. 404(b). However,

> the exclusionary force of the rule applies equally to instances where the proponent offers the evidence for another avowed purpose, but the court determines that in fact its only relevancy is to illustrate the character of the accused for purposes of establishing other actions in conformity with that character.

*State v. Barrett,* 401 N.W.2d 184, 187 (Iowa 1987).

The majority correctly states that to be admissible, evidence of a defendant's prior acts must be relevant. To be relevant, however, the evidence offered must tend to prove some fact that is in issue. Iowa R.Evid. 401. In the present case, the only fact issue is whether the alleged victim consented to the sexual activity between herself and defendant. More specifically, the issue is whether the sex acts were "done by force or against the will of the other participant." Iowa Code § 709.4(1). The majority concludes that evidence of a prior, nonconsensual sex act committed by the defendant is relevant to prove that the sex acts in the present case were also nonconsensual.

The majority's conclusion involves a leap in logic that I am unwilling to make. The issue of consent in a sexual abuse case focuses on the alleged victim's state of mind. I fail to see how one woman's state of mind on a previous occasion is relevant to prove another woman's state of mind on a later occasion. In the abstract, it may be true that a person who has committed one sexual abuse may be more likely to commit another. However, the defendant's acts and state of mind are not at issue in this case. The only issue involved is the alleged victim's state of mind. Evidence of prior acts is simply irrelevant.

In addressing this issue, the Fourth Circuit Court of Appeals has stated, "[t]he

fact that one woman was raped, however, has no tendency to prove that another woman did not consent." *Lovely v. United States,* 169 F.2d 386, 390 (4th Cir.1948); *see also People v. Key,* 153 Cal.App.3d 888, 895, 203 Cal.Rptr. 144, 148 (1984) (such evidence "is, at best, only tangentially probative" of consent issue); *Meeks v. State,* 249 Ind. 659, 664, 234 N.E.2d 629, 632 (1968) ("with consent being the only element at issue, the other alleged rape was irrelevant"); *State v. Alsteen,* 108 Wis.2d 723, 730, 324 N.W.2d 426, 429, (1982) ("Consent is unique to the individual.").

Even if the evidence were in some sense relevant to the issue of consent its probative value is so slight, as compared to its potential prejudicial effect, that the trial court erred in admitting it under rule of evidence 403. Our cases have previously recognized that in prosecutions involving sexual abuse, evidence that a defendant has committed prior sexual abuses is highly prejudicial. *State v. Spaulding,* 313 N.W.2d 878, 881 (Iowa 1981); *State v. Cott,* 283 N.W.2d 324, 327 (Iowa 1979). In *Cott,* we addressed the issue of whether evidence of a prior sex offense involving a child could be admitted against a defendant charged with a sex offense against a five-year-old girl. We stated:

> A focus on the criminal or aberrant disposition of the defendant with regard to various victims is exactly the sort of prejudice which the general rule seeks to avoid. By creating an exception of this kind, we would seriously erode the impact of the general rule proscribing evidence of prior criminal conduct, in the context of sex crimes. The result and unfairness to those accused of sex crimes is self evident.

*Cott,* 283 N.W.2d at 327 (footnotes omitted).

Despite the prosecution's claim that the challenged evidence was offered to prove lack of consent, its only possible relevance would be to prove that defendant had a bad character and acted in conformity with that character under the facts of this case. This is particularly true in regards to evidence of the extent of injury suffered by

the prior victim. Under our rule in *Barrett*, the prosecution may not avoid the force of the rule excluding such evidence by seeking to bring it in under some exception to the rule. 401 N.W.2d at 187. The evidence has no relevance to the issue of consent, as that issue focuses on the alleged victim's state of mind and not on the defendant's state of mind or the defendant's acts. Evidence that defendant engaged in prior nonconsensual sexual conduct does not tend to prove the state of mind of the alleged victim in this case. Furthermore, I believe that the potential prejudicial effect this evidence is obvious. It is so great as to substantially outweigh any potential probative value the evidence might have. I believe that the trial court abused its discretion in admitting this evidence and that a new trial should be granted.

CARTER and ANDREASEN, JJ., join this dissent.