# IN THE COURT OF APPEALS OF IOWA

No. 3-1238 / 12-2274
Filed February 19, 2014

STATE OF IOWA,
        Plaintiff-Appellee,

vs.

MARK EUGENE YUNGTUM,
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Bremer County, Paul W. Riffel, Judge.

        A defendant appeals from the judgment and sentence entered after a jury verdict of guilty of arson in the second-degree and false reports to law enforcement. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, and Kasey E. Wadding, County Attorney, for appellee.

        Considered by Tabor, P.J., and McDonald, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**GOODHUE, S.J.**

Mark Eugene Yungtum appeals from the judgment and sentence entered after a jury found him guilty of arson in the second-degree and false reports to law enforcement. Probation was denied, and the sentences were ordered to run concurrently. Yungtum asserts that the trial court erred in admitting a photograph allegedly depicting him, his son, and a dead deer with a red plastic gasoline container in the background. Because of the claimed error, Yungtum seeks a new trial.

## I. Background Facts and Proceedings

At about 11:00 p.m. on the night of March 6, 2006, Yungtum's neighbors were awakened by two very loud bangs and immediately noticed that Yungtum's house was on fire. Yungtum was found lying in the driveway with a wire around his neck, a stab wound to his thigh, bruises on his ribcage, burns on his arm, and abrasions to his head. Yungtum related that he had been attacked by three masked intruders who had hit him on the back of his head with a board, drug him by the wire around his neck, otherwise physically assaulted him, and eventually set the house on fire. Yungtum was taken to a hospital emergency room where he was examined and treated. Law enforcement was called, and multiple pictures were taken of his injuries.

In interviews with law enforcement, Yungtum immediately blamed Mindy Riley for the attack. He related that one of the intruders made a statement indicating the attack was being made on Riley's behalf. Yungtum and Riley had a disagreement over financial matters that could have had an adverse effect on her because of prior and pending criminal charges. Law enforcement

immediately investigated Riley and could find nothing to connect her to the alleged attack or fire.

Investigation into the site reflected that gasoline had been used as an accelerant. A red two-gallon plastic gas container was found on the main floor, and a red five-gallon plastic container was found in the upstairs hallway. Yungtum told the investigating officers that he only owned a red metal gas can.

Yungtum's financial records were mostly in his pickup the night of the fire. He explained to law enforcement he had placed them there earlier that evening, as he was going to see a lawyer the next day relative to his financial issues with Riley. He owned three guns—one was in his pickup and the other two were later discovered elsewhere. There were a number of plastic bins in Yungtum's detached garage that contained movies, albums, his father's military memorabilia, photographs, and et cetera. Youngtum's home had suffered a previous fire in 2005. There was evidence at least some of these items had been in the garage since the earlier fire.

As a result of the 2005 fire, the second floor of Yungtum's house remained unfinished. An accountant reviewed Yungtum's financial records and testified that he had received an insurance settlement and had taken out a new mortgage for the repair work after the 2005 fire. Even though the second floor of the house had not been finished, all of the funds had been exhausted. At the date of the 2006 fire, Yungtum owed approximately $70,000 on a house mortgage and $4000 on three credit cards—two of which were over the loan limit—and had $300 in his personal checking account. Yungtum filed an insurance proof of loss for $240,000 as the result of the 2006 fire.

The State had a physician examine the hospital records and pictures taken of Yungtum immediately after the reported injuries. The physician reported there was no indication he was struck on the back of his head and testified that all of Yungtum's injuries could have been self-inflicted.

Among the items found in the garage were photographs which included one identified as a picture of Yungtum and his son, who was sitting on a deer Yungtum had shot. There was a red plastic gas can in the background. Where the picture was taken or who took the picture was unknown, and where it was taken was a matter of dispute. The trial court admitted the picture into evidence over Yungtum's strenuous objection.

## II. Preservation of Error

Yungtum objected to the admission of the disputed picture based on relevance and lack of foundation, and moved for a mistrial after its submission and for a new trial after the verdict was returned. Error has been preserved.

## III. Standard of Review

Admission of photographic evidence rests largely within the trial court's discretion. Therefore, the appellate court's review is for abuse of discretion. *State v. Sayles*, 662 N.W.2d 1, 8 (Iowa 2003). An abuse of discretion only occurs when the trial court's use of discretion is clearly unreasonable or untenable, meaning it is not supported by substantial evidence or it is based on an erroneous application of law. *Id.*

## IV. Discussion

A demonstrative document is admissible if sufficient evidence is admitted to sustain the finding of its authenticity. *State v. Holderness*, 293 N.W.2d 226,

230 (Iowa 1980). A lack of knowledge as to when the picture was taken or who took the picture is not dispositive as to its admission. *See id.* The picture was obviously introduced to show Yungtum had possession of, or at least probable access to, a red plastic gas can as shown in the background of the picture. The only real dispute was to where the picture had been taken. There was testimony that it appeared to have been taken in Yungtum's garage, which would enhance his accessibility to a red plastic gas can. The jury had in evidence several other pictures of the inside of Yungtum's garage and had heard the testimony of the witnesses relative to where the picture had been taken. Other factors besides the witnesses' testimony, which are an inherent part of the photograph, can be taken in consideration to determine the admissibility and authenticity. *Id.* at 232. The trial court ruled that Yungtum's objection was to the weight of the evidence and not its admissibility.

Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable then it would be without the evidence. Iowa R. Evid. 5.401; *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). The existence of the red plastic gasoline can at the site where Yungtum's picture was taken would be a factor that the jury could use in concluding that Yungtum at least had access to a gasoline can similar to the one found at the fire site.

"Even relevant evidence may be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice . . . .'" *State v. Castaneda*, 621 N.W.2d 435, 440 (Iowa 2001) (quoting Iowa R. Evid. 5.403). Unfair prejudice suggests an improper basis for a jury's decision and usually

refers to a play on a jury's emotions rather than a rational decision making process. *State v. Plaster*, 424 N.W.2d 226, 231-32 (Iowa 1988). There is nothing about the subject picture that incites any unusual emotional bias or prejudice.

The trial court's decision to admit the subject picture was clearly within its discretion.

**AFFIRMED.**