# IN THE COURT OF APPEALS OF IOWA

No. 17-0584
Filed April 18, 2018

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**BRIAN EUGENE INGRAM, JR.,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Boone County, Paul G. Crawford,

District Associate Judge.


　　　Brian Ingram appeals his convictions for domestic abuse assault with a

dangerous weapon and child endangerment.　**AFFIRMED.**


　　　Mark C. Smith, State Appellate Defender, and Robert P. Ranschau,

Assistant Appellate Defender, for appellant.

　　　Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


　　　Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

Brian Ingram appeals his convictions for domestic abuse assault with a dangerous weapon, in violation of Iowa Code section 708.2A(3)(b) (2016), and child endangerment, in violation of Iowa Code section 726.6(7). He claims his trial counsel was ineffective for failing to object to the introduction of text messages and for failing to strike a juror. He also claims the district court erred in allowing the State to impeach his witness with prior convictions and for denying his motions for new trial based on the weight of the evidence and a biased juror. Because the text messages were sufficiently relevant and not unfairly prejudicial, we find his counsel was not ineffective for not objecting to their introduction. We also agree with the district court that the probative value of the witness's prior convictions outweighs their prejudicial effect, the weight of the evidence does not require a new trial, and the juror was not impermissibly biased. We preserve the ineffective-assistance claim relating to the use of peremptory strikes. We affirm the convictions.

## I.      Background Facts and Proceedings

In August 2016, Brian[1] and Amanda Ingram had been married for about twelve years. Around 5:30 or 6:00p.m., on the evening of August 12, 2016, Brian and Amanda began arguing in their home. The couple argued over whether to visit Laurie Larsen, Amanda's friend, and Adam Winger, Larsen's friend. Brian and Amanda's minor children—including twelve-year-old J.I.—were in the home during the argument, as were some of the children's friends. During the argument, Brian

---

[1] This opinion will refer to the Defendant–Appellant as "Brian."

entered their bedroom and picked up two of his shotguns. Amanda testified Brian looked right at her, pointed the shotguns at her toes, "and asked what toe [she] wanted him to shoot first." J.I. was in the bedroom at the time, and the other children in the home could have heard—and possibly seen—Brian make the threat. An eight-year-old friend who was in the Ingram home at the time testified he saw and heard Brian threaten to shoot Amanda while holding a shotgun. Amanda felt scared and did not know what Brian would do. Brian then left the house with J.I. and the shotguns.

After the argument, Amanda went to Larsen's home to meet Larsen and Winger. Brian called and sent text messages to Amanda while she was in the home. The text messages indicated Brian was watching Amanda, Larsen, and Winger in the home. Brian threatened Winger in the text messages. Amanda testified she believed Brian still had his shotguns at the time, and the text messages made her more scared. Amanda called the police around 9:00 or 10:00p.m. that night.

Shortly after midnight on August 13, Deputy Dallas Wingate stopped Brian's vehicle on a county road and identified Brian in the driver's seat. Deputy Wingate also identified a child matching J.I.'s description in the vehicle. The child did not appear to be injured. Deputy Wingate did not find any firearms in the vehicle.

At trial, the State offered testimony from multiple witnesses, including Amanda and the eight-year-old friend. Brian offered the testimony of his uncle, Herbert Miller. Miller testified that Amanda told him she had not been truthful with law enforcement about the events of August 12. According to Miller, Amanda was afraid she would go to jail if she corrected her statements. On cross-examination,

in response to a question about his criminal history, Miller admitted he had been convicted of two counts of theft in 1999.

The jury found Brian guilty of domestic abuse assault with a dangerous weapon and child endangerment. Brian then filed a motion for new trial. In a hearing on the motion, Brian testified about the claimed bias of Juror G. Juror G is married to Brian's ex-girlfriend. Brian dated the ex-girlfriend for over four years, with their most recent date in 1998. Brian testified the ex-girlfriend still wanted to "get back with" him even after they broke up and after she married Juror G. Once, the ex-girlfriend entered Brian's apartment and asked to reunite with him, and she only left when Juror G arrived and yelled for her to come outside. Most recently, in 2009, Brian testified Juror G told a friend he wanted to fight Brian after Brian moved into a home one block away from Juror G. Although voir dire was not reported, Brian later testified that Juror G said he had no feelings toward Brian and he could be a fair and impartial juror. Brian disputed the truthfulness of both of these statements. During jury selection, Brian told his counsel to use his final peremptory strike on Juror G, but his counsel struck a different prospective juror. Brian changed counsel between the trial and the post-trial hearing, and his voir dire counsel did not participate in the post-trial hearing.

The court denied the motion for new trial and entered judgment on both counts. Brian appeals.

II.     **Scope and Standard of Review**

We review ineffective-assistance-of-counsel claims de novo. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *State v. Nitcher*, 720 N.W.2d 547, 553 (Iowa 2006)). We review the underlying claims about admission of

evidence for abuse of discretion. *State v. Brown*, 569 N.W.2d 113, 116 (Iowa 1997) (citing *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988)). We review a motion for new trial based on the weight of the evidence for abuse of discretion. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (citing *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). We review the admissibility of a witness's prior crimes for abuse of discretion. *State v. Redmond*, 803 N.W.2d 112, 117 (Iowa 2011) (citing *State v. Parker*, 747 N.W.2d 196, 203 (Iowa 2008)). Finally, we review a motion for new trial due to juror bias for abuse of discretion. *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015) (citations omitted).

### III.    Relevancy and Prejudice of the Text Messages

Brian argues his counsel was ineffective for failing to object to the text messages he sent to Amanda on the night of August 12, 2016. He claims the text messages were not relevant and were excessively prejudicial.

"In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *Maxwell*, 743 N.W.2d at 195. "Both elements must be proven by a preponderance of the evidence. However, both elements do not always need to be addressed. If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (citations omitted). It is permissible for defendants to raise claims of ineffective assistance of counsel on direct appeal. *State v. Straw*, 709 N.W.2d 128, 132 (Iowa 2006). However, when a claim of ineffective assistance of counsel is raised on direct appeal, we will only decide the claim when the record is adequate to do so. *Id*.

To support a conviction for domestic abuse assault, the State must prove Brian committed an assault. *See* Iowa Code § 708.2A(1) (defining domestic abuse assault).

> A person commits an assault when, without justification, the person does any of the following:
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
> c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

*Id.* § 708.1(2). The State is required to prove Brian acted with the necessary intent to commit assault. *See State v. Taylor*, 689 N.W.2d 116, 125 (Iowa 2004) (requiring the State to prove the defendant intended to cause pain and injury to his wife).

Generally, evidence is admissible if it is relevant. *See* Iowa R. Evid. 5.402. "Evidence is relevant if a reasonable person might believe the probability of the truth of the consequential fact to be different if the person knew of the challenged evidence." *Brown*, 569 N.W.2d at 116 (citing *Plaster*, 424 N.W.2d at 228). Relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *See* Iowa R. Evid. 5.403. "'Unfair prejudice' is an undue tendency to suggest decisions by the fact finder based on an improper basis, often an emotional one." *Brown*, 569 N.W.2d at 117 (citing *Plaster*, 424 N.W.2d at 231). Parties typically offer evidence to sway the factfinder, "so most evidence that damages a party's case is not to be considered unfairly prejudicial." *Id.* (citing *Plaster*, 424 N.W.2d at 231).

Brian argues the text messages had little to do with the charged conduct from inside the Ingram home and any relevancy to the charges is outweighed by the messages' threatening language. The text messages indicate Brian was upset about Amanda meeting Larsen and Winger. As such, the text messages are relevant to show Brian's intent to assault Amanda over plans to talk to Larsen and Winger. The text messages also show Brian continued his hostile communications with Amanda after their argument, which is relevant to show why Amanda first contacted the police multiple hours after the argument in the Ingram home. Any unfair prejudice in the text messages does not significantly outweigh their relevancy. *See Brown*, 569 N.W.2d at 117 (citing *Plaster*, 424 N.W.2d at 231). Therefore, Brian's counsel did not cause prejudice by failing to object to the text messages, and Brian has not shown he received ineffective assistance of counsel. *See Maxwell*, 743 N.W.2d at 195.

## IV.    Admissibility of Miller's Prior Convictions

Brian claims the district court erred in admitting Miller's theft convictions for impeachment. Brian argues Miller, as his only witness, was important for casting doubt on Amanda's claims. As such, the court should not have allowed Miller to be impeached by two minor theft convictions that occurred about seventeen years prior to trial.

For purposes of impeachment, the court must admit a crime involving dishonesty if no more than ten years have passed since the witness's conviction or release from confinement. Iowa R. Evid. 5.609(2). A crime of dishonesty more than ten years old may be admitted, subject to reasonable notice, if "[i]ts probative value, supported by specific facts and circumstances, substantially outweighs its

prejudicial effect." Iowa R. Evid. 5.609(2)(b). Our supreme court has ruled theft is a crime of dishonesty. *State v. Harrington*, 800 N.W.2d 46, 51 (Iowa 2011) (citations omitted).

The district court provided an on-the-record justification for admitting Miller's theft convictions:

> . . . [T]o counter [the State's witnesses], Mr. Miller has indicated a vague, generalized complete denial that Mrs. Ingram apparently subsequently later made, and to me that creates, again, a—that generates a similar he-said, she-said kind of situation to [*State v. O'Neal*, No. 11-0915, 2012 WL 4513809 (Iowa Ct. App. Oct. 3, 2012)].
>
> And for those reasons, I think that the nature of the convictions and how they bear on veracity—obviously theft does go to truthfulness, dishonesty. Honesty is something the jury can consider. The age of the convictions, they are a bit older than the [*State v. Roby*, 495 N.W.2d 773 (Iowa Ct. App. 1992)] thirteen-year-old one, the seventeen-year-old, but I don't think it's too far old given that the—I think the age concern is offset to me by the higher significance—the nature of the offense being a theft and a dishonesty crime.
>
> Finally, tendency to improperly influence the jury. It's not Mr. Ingram's prior theft conviction, so I don't think the jury is going to say, oh, he did a theft and—you know, seventeen years ago. He must have done this in 2016. They are not going to be making that leap of logic.
>
> And the prior conviction is against Mr. Miller and not Mr. Ingram. So I think that minimizes the prejudicial concerns that might arise.

We agree with the district court. Theft, as a crime of dishonesty, is relevant to the credibility of the witness. At seventeen years, Miller's convictions are not so old as to be irrelevant. Miller's theft convictions are wholly unrelated to the charges against Brian. The jury can evaluate the age and seriousness of Miller's convictions and assign the appropriate weight. Therefore, the district court did not abuse its discretion by admitting Miller's theft convictions for impeachment purposes. *See* Iowa R. Evid. 5.609(2)(b).

**V.     Weight of the Evidence**

Brian asserts the district court erred in rejecting his motion for a new trial based on the weight of the evidence.  He argues the evidence supports acquittal on both domestic abuse assault with a dangerous weapon and child endangerment.

"The weight-of-the-evidence standard requires the district court to consider whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict."  *Ary*, 877 N.W.2d at 706.  A verdict is against the weight of the evidence if "'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice."  *Id.*  "[A] district court may invoke its power to grant a new trial on the ground the verdict was contrary to the weight of the evidence only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered."  *Id.*

In order to convict Brian of domestic abuse assault with a dangerous weapon, the State must prove Brian committed an assault, as discussed above. *See* Iowa Code § 708.1 (defining assault).  The State must also prove the assault was "between family or household members who resided together at the time of the assault."  Iowa Code § 236.2(2)(a) (defining domestic abuse).  Finally, the State must prove Brian "use[d] or display[ed] a dangerous weapon in connection with the assault."  *Id.* § 708.2(3).

The State's evidence in support of the assault charge includes testimony from Amanda and the eight-year-old friend.  Both witnesses testified Brian threatened to shoot Amanda while he held a shotgun.  This testimony shows Brian held the specific intent to place his wife Amanda in fear of physical contact that will

be painful or injurious, and he acted while using or displaying a dangerous weapon.
*See id.* § 708.1(2)(b). Brian presented testimony from Miller, who was not in the Ingram home at the time of the events. Miller attacked Amanda's credibility, but, as discussed above, the State also attacked Miller's credibility. After reviewing all evidence in the record, we agree with the district court, the evidence does not preponderate heavily against finding Brian committed domestic abuse assault with a dangerous weapon. *See Ary*, 877 N.W.2d at 706.

In order to convict Brian of child endangerment, the State must prove Brian was the parent of J.I.—a child—and he "[k]nowingly act[ed] in a manner that creates a substantial risk to [J.I.'s] physical, mental or emotional health or safety." Iowa Code § 726.6(1)(a). The district court summarized the evidence supporting child endangerment:

> The evidence could have been clearer on Count Two. As an example, the layout of the home would have helped. Amanda's testimony was that Defendant went to the bedroom and got the shotguns. He then walked by her but stopped. She was vague as to just where she was and where Defendant was in relation to her when he made the verbal threat and displayed the gun consistent with that threat. It is also not clear what room they were in at the time of the assault. She testified [J.I.] would have been in the bedroom and the other children in the living room. She said that the children could have heard what was threatened in the bedroom.
> Assuming Defendant, Amanda, and [J.I.] were all in the bedroom when the assault happened, the Court is satisfied that element 3 [knowingly acting in a manner that creates a substantial risk to J.I.'s physical, mental or emotional health or safety] was met. Alternatively, even if Defendant and Amanda were in a different room, it is likely that [J.I.] was in a position to see and hear the assault. After all, defense raised the theory (somewhat supported by [the eight-year-old friend's] testimony) that Defendant and [J.I.] had planned to leave together and go hunting. So if [J.I.] was in the bedroom when Defendant retrieved the guns they intended to take on their hunting trip, it would be reasonable that [J.I.] would have followed Defendant out of the bedroom (thinking they were going to leave the house and go hunt). This would have put [J.I.] in close

proximity to hear and see the assault upon his mother. Under either set of facts, Defendant created a "very real possibility of danger" to [J.I.'s] physical, mental or emotional health or safety.

Although J.I. did not testify and the evidence does not establish J.I.'s precise location relative to the assault, the weight of the evidence allows the factfinder to conclude J.I. saw and heard the assault. Accordingly, we agree with the district court the evidence does not preponderate heavily against finding Brian committed child endangerment. *See Ary*, 877 N.W.2d at 706. Because the evidence does not preponderate heavily against finding Brian guilty of either count, the district court did not abuse its discretion in rejecting his motion for a new trial based on the weight of the evidence. *See id.*

## VI. Juror Bias

Brian claims Juror G's hostility toward him constituted juror bias. Brian argues the district court abused its discretion in refusing to grant a new trial due to this bias.

Juror bias may be implied or actual. *Webster*, 865 N.W.2d at 236. "Implied bias arises when the relationship of a prospective juror to a case is so troublesome that the law presumes a juror would not be impartial." *Id.* (citing *United States v. Wood*, 299 U.S. 123, 133 (1936)). "Actual juror bias occurs when the evidence shows that a juror, in fact, is unable to lay aside prejudices and judge a case fairly on the merits." *Id.* (citing *Wood*, 299 U.S. at 133). A party waives claims of juror bias if the party does not use procedures to identify bias at trial. *Id.* at 237 (citing *State v. Coffee*, 182 N.W.2d 390, 395–96 (Iowa 1970)).

Because voir dire was not reported, the entire factual record for Brian's claim of juror bias comes from Brian's testimony in the post-trial hearing on his motion for a new trial.

While Brian testified Juror G lied during voir dire, he did not identify any specific statement from Juror G as a lie, except for his knowledge of Brian and that he could be a fair and impartial juror. Juror G acknowledged he knew Brian. "The mere fact a juror has knowledge of parties or witnesses does not indicate actual bias or require juror disqualification." *Id.* at 238–39 (citations omitted). Juror G did not say he knew any of Brian's ex-girlfriends, but no one asked him such a question. A juror is not required to volunteer answers to unasked questions. *Id.* at 237 (citing *McGaha v. Commonwealth*, 414 S.W.3d 1, 4–7 (Ky. 2013)).

Additionally, Brian never claimed that Juror G had ever directly expressed hostility to him. According to Brian's testimony about the incident with the ex-girlfriend in his apartment, Juror G yelled for her to come outside, but Juror G never yelled at Brian. Brian also testified Juror G told a friend he wanted to fight Brian about seven years before trial, but Brian's testimony does not show Juror G ever said or did anything hostile directly to him even though they lived a block apart for a time.

As Brian acknowledged, Juror G said he could be fair and impartial. The district court is entitled to place weight on such a statement. *See Webster*, 865 N.W.2d at 238 (citing *State v. Walters*, 426 N.W.2d 136, 139 (Iowa 1988)) ("Of course the juror's testimony may be self-serving, but the district court found her credible."). The district court is also entitled to place less weight on Brian's self-serving testimony. *See Dempsey v. State*, 860 N.W.2d 860, 871 (Iowa 2015)

(finding the record contains no evidence to support the defendant's claim "other than his own subjective, self-serving testimony."). Therefore, the district court did not abuse its discretion when it rejected Brian's motion for new trial due to juror bias.

### VII. Use of Peremptory Strikes

Finally, Brian argues his counsel was ineffective for failing to strike Juror G during jury selection. The record does not contain a transcript of voir dire or testimony from Brian's trial counsel explaining the decision to not strike Juror G. Additionally, Brian provided little information about the strategy behind the use of peremptory strikes. Accordingly, we preserve the ineffective assistance of counsel claim as it relates to not striking Juror G for possible postconviction relief proceedings. *See State v. DeCamp*, 622 N.W.2d 290, 296 (Iowa 2001) ("Ineffective assistance of counsel claims presented on direct appeal are typically preserved for postconviction relief proceedings to allow for a full development of the facts surrounding the conduct of counsel.").

### VIII. Conclusion

Because the text messages were sufficiently relevant and not unfairly prejudicial, we find Brian's counsel was not ineffective for not objecting to their introduction. We also agree with the district court that the probative value of the witness's prior convictions outweighs their prejudicial effect, the weight of the evidence does not require a new trial, and the juror was not impermissibly biased. Finally, we preserve Brian's ineffective-assistance-of-counsel claim relating to the use of peremptory strikes.

**AFFIRMED.**