STATE of Wisconsin, Plaintiff-Respondent,

v.

Timothy M. ZIEBART, Defendant-Appellant.†

Court of Appeals

*No. 03–0795. Oral argument October 7, 2003.—
Decided November 18, 2003.*

2003 WI App 258

(Also reported in 673 N.W.2d 369.)

† Petition to review denied 2-24-04.

470

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* of *Henak Law Office, S.C.*, of Milwaukee. There was oral argument by *Robert R. Henak*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Alan Lee*, assistant attorney general. There was oral argument by *Alan Lee*.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Timothy M. Ziebart appeals from the circuit court order partially granting and

partially denying his motion for postconviction relief, following his conviction for robbery, kidnapping, impersonating a peace officer, intimidating a victim, and two counts of second-degree sexual assault, all as a habitual criminal.[2] He argues, under *State v. Alsteen*, 108 Wis. 2d 723, 324 N.W.2d 426 (1982), that trial counsel was ineffective for failing to object to what he terms the trial court's "substantially overbroad *Whitty* instruction . . . advis[ing] the jury that it could use evidence of [his] prior bad acts as evidence of non-consent,"[3] and that postconviction counsel was ineffective for failing to raise that argument. Ziebart also argues that the circuit court erred in denying his ineffective-assistance-of-counsel claims without holding an evidentiary hearing, and in denying his request for postconviction discovery.

¶ 2. We conclude that *Alsteen's* limitation of other-acts evidence to prove non-consent is not absolute and, in this case, would not have precluded the court's jury instruction. Therefore, because an objection to the other-acts jury instruction would properly have been overruled, neither trial counsel nor postconviction counsel was ineffective. We also reject Ziebart's challenge to the circuit court's denial of postconviction discovery. Accordingly, we affirm.

## I. BACKGROUND

¶ 3. At Ziebart's 1998 jury trial, Mary S. testified that on the evening of August 23, 1997, after spending the day engaging in prostitution, she was coming down

---

[2] The order partially granting Ziebart's motion for postconviction relief vacated his conviction for impersonating a peace officer.

[3] *See Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967).

from a cocaine high when she and her girlfriend had an altercation with some unknown individuals on National Avenue in Milwaukee. At just that moment, a stranger, later identified as Ziebart, drove up and asked Mary if she needed a ride. She told Ziebart that she "was not dating," but that she could use a ride. Ziebart agreed stating, "I can give a beautiful lady a ride home."

¶ 4. Mary testified that she entered Ziebart's car and offered to pay for the ride. Ziebart declined her offer, drove to a service station, offered to buy Mary a soda, and went inside. When he returned, he stuffed something between the seats. As they neared her home, Mary asked Ziebart to pull over and let her out, but Ziebart reached across her and locked the passenger door. He grabbed Mary's wrist and threatened to kill her if she refused to follow his orders. Ziebart then parked on a secluded street and told Mary to take off her pants and shoes. He removed a box of condoms from between the seats, told Mary he did not want to catch any diseases from a "crack whore," and had sexual intercourse with her. He then ordered her to "suck his fat dick," and continually berated her for being a "crack whore."

¶ 5. Mary testified that Ziebart then drove to a nearby park where she unlocked the door and tried to escape. Ziebart pursued her, tripped her, robbed her, and threatened to kill her. He told Mary he was a St. Francis Police Officer and that she should not call the police because he and his "police brothers" would "get her." He said that he and his fellow officers were "sick of crack whores on the street," and repeatedly told her not to contact police because they would not believe her. Ziebart then fled the scene and Mary screamed for help.

¶ 6. Neighborhood residents testified that they heard Mary's screams and called the police. Cudahy

Police Officer Glen Haase testified that when he arrived in the vicinity of the park, he found Mary extremely upset and disheveled, her jeans unbuttoned and open at the waist. When Officer Haase tried to question Mary at the scene, she immediately responded, "He tried to kill me." After being taken to the hospital, Mary provided Officer Haase a detailed account of the events.

¶ 7. At trial, Mary testified that several days after the assault, she received a phone call from a man who said, "Hello, Mary? . . . This is fat dick." The police traced the call to Ziebart. Cudahy Police Detective Byron McManaman testified that Ziebart denied making the call, denied stopping at the service station, and denied assaulting Mary. After being confronted with the service station's videotape showing him there, however, Ziebart changed his story. He admitted having had intercourse with Mary but, he maintained, he paid Mary twenty dollars for what he considered consensual sex.

¶ 8. Ziebart did not testify, but his statements to the police were introduced at trial.[4] To rebut Ziebart's claim of consent, the State called Daryl H., who testified that, several years earlier, Ziebart and others had abducted him, sexually assaulted and robbed him. He

---

[4] Not falling within any exception to the rule against hearsay, Zeibart's statements to the police would have been inadmissible had he attempted to introduce them. *See* Wis. Stat. §§ 908.01(3), 908.02, & 908.03; *see also State v. Lass*, 194 Wis. 2d 591, 605, 535 N.W.2d 904 (Ct. App. 1995) ("[A]nything of an exculpatory nature that Lass might have said to his fellow inmate at the jail would have been hearsay, *see* Rule 908.01(3), Stats., and not admissible if offered into evidence by him, *see* Rule 908.02, Stats."). Because, however, Ziebart's statements were offered by the State, they were "not hearsay." *See* Wis. Stat. § 908.01(4)(b)1.

said that during the assault, Ziebart continually berated and threatened him, and claimed to be a vigilante police officer on a rampage to rid the streets of drug addicts.

¶ 9. The trial court instructed the jury:

Evidence has been received in this case regarding crimes committed by the defendant and conduct of the defendant for which the defendant is not now on trial. Specifically, evidence has been received that the defendant engaged in certain conduct against Daryl . . . and was convicted of the crimes of battery, false imprisonment, kidnapping and burglary as a result of that conduct. *If you find that this conduct did occur, you should consider it only on the issues of the defendant's motive, intent, preparation or plan and on the issue of non-consent in this case.* You may not consider this evidence to conclude that the defendant has a certain character or certain character trait and that the defendant acted in conformity with that trait or character with respect to the offenses charged in this case. The evidence was received on the issues of motive, that is, whether the defendant has a reason to desire the result of the crimes; intent, that is, whether the defendant acted with the state of mind that is required for these offenses; preparation or plan, that is[,] whether such conduct of the defendant is evidence of a design or scheme that is related to or encompasses the commission of the offenses now charged; *and non-consent, that is, whether the victim freely consented or did not consent to the alleged acts of the defendant in this case.*

You may consider this evidence only for the purposes I have described, giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offenses charged.

477

(Emphases added.) The jury convicted Ziebart and the court sentenced him to 148 years in prison.

¶ 10. Ziebart appealed and this court affirmed. *See State v. Ziebart*, No. 00–1612–CR, unpublished slip op. (WI App May 22, 2001), *review denied,* 2001 WI 114, 246 Wis. 2d 174, 634 N.W.2d 320. We rejected Ziebart's arguments, one of which challenged the admission of Daryl's testimony. We concluded that the testimony "was offered for permissible purposes." *Id.*, ¶ 14. We explained: "[Daryl's testimony] helped to prove the crimes against Mary by showing that Ziebart had employed a similar plan, and had acted with a similar motive and intent on a previous occasion. *Thus, the evidence impeached Ziebart's consent defense." Id.* (emphasis added).

¶ 11. Ziebart acknowledges that he "is bound by this Court's conclusion on his direct appeal that the other acts evidence was admissible to show plan, motive or intent," but he argues that "the trial court's theory, expressed in the 'limiting instruction,' that such evidence *also* is admissible to show non-consent is squarely at odds with *Alsteen*." Ziebart further contends that, although we concluded that "the evidence impeached Ziebart's consent defense," our decision "did not address whether the evidence was properly admissible on the issue of non-consent, and neither the defense nor the State argued admission of the evidence on that ground."[5]

---

[5] In fact, contrary to Ziebart's contention, the State addressed *State v. Alsteen*, 108 Wis. 2d 723, 324 N.W.2d 426 (1982), in its March 2, 1998 motion supporting the admission of the *Whitty* evidence. Indeed, the State acknowledged that:

the mere fact of a prior non-consentual [sic] sexual incident in the absence of a factual context that makes its admission relevant, is

¶ 12. Thus, Ziebart asserts that "the issue is whether reversal is required because, even assuming that the 'other acts' evidence was properly admitted on the grounds found by this Court, the trial court's 'limiting' instruction permitted, and indeed encouraged, the jury to use that evidence for what [*Alsteen*] has recognized to be an improper purpose, proof of non-consent."

## II. DISCUSSION

### A. Jury Instruction

¶ 13. Ziebart first offers his argument in the context of claiming that trial counsel was ineffective for failing to object to the instruction permitting the jury to consider Daryl's testimony on the issue of "whether the victim freely consented or did not consent to the alleged acts of the defendant in this case." We reject his argument.

¶ 14. The standards governing claims of ineffective assistance of counsel have been repeated many times and need not be detailed here. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Johnson,*

not admissible to refute a consent defense, *Alsteen, supra.* However, where, as here, the prior and current offense share many features in common, the prior offense is highly relevant and [its probative value is] not [substantially] outweighed by the [danger of unfair] prejudice.

Additionally, the State argued that the evidence was relevant to: "(1) the defendant's intent, motive and common plan/scheme to kidnap the victim and hold her to service against her will and sexually assault and rob her . . . because of her alleged drug involvement and alleged sexual misbehavior and (2) refute [the defendant's] consent defense."

479

153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). Suffice it to say, however, that a defendant claiming ineffective assistance must establish both deficient performance and prejudice, *see Strickland*, 466 U.S. at 687, and a claim predicated on a failure to challenge a *correct* trial court ruling cannot establish either. *See State v. Wheat*, 2002 WI App 153, ¶ 14, 256 Wis. 2d 270, 647 N.W.2d 441 (counsel's failure to present legal challenge is not deficient performance if challenge would have been rejected); *State v. Jackson*, 229 Wis. 2d 328, 344, 600 N.W.2d 39 (Ct. App. 1999) (counsel's failure to present legal challenge is not prejudicial if defendant cannot establish challenge would have succeeded).

¶ 15. Similarly, because a defendant claiming ineffective assistance of postconviction counsel must establish postconviction counsel's failure to challenge trial counsel's performance, no such claim can succeed if predicated upon trial counsel's failure to challenge a *correct* trial court ruling. *See State ex rel. Flores v. State*, 183 Wis. 2d 587, 618–20, 516 N.W.2d 362 (1994). Thus, to establish that postconviction or appellate counsel was ineffective, a defendant bears the burden of proving that trial counsel's performance was deficient and prejudicial. *See State v. Sanchez*, 201 Wis. 2d 219, 232–36, 548 N.W.2d 69 (1996).

¶ 16. A trial court has broad discretion in instructing a jury but must exercise that discretion in order to fully and fairly inform the jury of the applicable rules of law. *State v. Coleman*, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996). Whether a jury instruction is appropriate, under the given facts of a case, is a legal issue subject to independent review. *See State v. Pettit*, 171 Wis. 2d 627, 638, 492 N.W.2d 633 (Ct. App. 1992). On

review, the challenged words of jury instructions are not evaluated in isolation. *Id.* at 637. Rather, jury instructions "must be viewed in the context of the overall charge." *Id.* Relief is not warranted unless the court is "persuaded that the instructions, when viewed as a whole, misstated the law or misdirected the jury." *Id.* at 637–38. Whether a jury instruction violated a defendant's right to due process is a legal issue subject to *de novo* review. *Id.* at 639.

██ ██

¶ 17. Whether trial counsel's performance was deficient and, if so, whether it was prejudicial are legal issues also subject to our *de novo* review. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). Here, because the trial court correctly instructed the jury, Ziebart's ineffective-assistance-of-counsel claims fail.

¶ 18. In our decision denying Ziebart's previous appeal, we observed that the State introduced Daryl's testimony "to rebut Ziebart's claim that Mary had consented to having sex with him." *Ziebart*, No. 00–1612–CR, unpublished slip op., ¶ 7. We explained:

> As the supreme court recently reiterated, "If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if the defendant does not dispute the element." *State v. Hammer*, 2000 WI 92, ¶ 26. *And here, of course, Ziebart, claiming consent, was disputing his intent to commit any crime. Thus, the State could use other acts evidence of Ziebart's assault of Daryl to help prove Ziebart's intent to commit the strikingly similar crimes against Mary.*

(Emphasis added.)

¶ 19. Still, Ziebart argues that *Alsteen* "expressly held such evidence to be irrelevant to the issue of consent." After all, he asserts, the supreme court de-

clared: "Consent is unique to the individual. The fact that one woman was raped . . . has no tendency to prove that another woman did not consent.' " *Alsteen*, 108 Wis. 2d at 730 (quoting *Lovely v. United States*, 169 F.2d 386, 390 (4th Cir. 1948)). The State responds, "*Alsteen* does not stand for the proposition that other acts evidence can never be probative of the issue of consent or that the other acts evidence is not probative of the issue of the victim's credibility." The State is correct.

¶ 20. Although, as the supreme court explained, consent, in the context of sexual conduct, "is unique to the individual," *id.*, and although, therefore, the prior non-consent of one person to sexual contact may not be introduced *solely* to prove the non-consent of another person to sexual contact, the preclusion of such other-acts evidence is not absolute. Where, as here, the other-acts evidence of non-consent relates not only to sexual contact but also to a defendant's *modus operandi* encompassing conduct inextricably connected to the strikingly similar alleged criminal conduct at issue, the evidence of non-consent may be admissible to establish motive, intent, preparation, plan, and absence of mistake or accident under WIS. STAT. § 904.04(2).[6]

¶ 21. In this case, the trial court recognized that, while the assaults of Daryl and Mary differed in some respects, they shared what the court termed "some strong similarities . . . in terms of the person representing [himself to be] a police officer and the basic act of

---

[6] WISCONSIN STAT. § 904.04(2) (1999–2000) provides:

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

physical and sexual degradation." Noteworthy, also, was Ziebart's vigilante-like *modus operandi;* his determination to deal with "crack whores," in Mary's assault, and "drug addicts," in Daryl's.

¶ 22. In *State v. Plaster*, 424 N.W.2d 226 (Iowa 1988), the Iowa Supreme Court recognized this *modus operandi* qualification on what otherwise would be the preclusion of other-acts evidence of non-consent. *Id.* at 230–31. The defendant was convicted of sexually assaulting a woman in an incident "arising out of initially consensual sexual activity." *Id.* at 227. While agreeing to engage in some sex acts with the defendant, the victim did not consent to vigorous vaginal manipulation that, the defendant insisted, other women enjoyed. The two doctors who examined the victim corroborated her account "that 'she had been assaulted with a fist into the vagina,'" causing painful, vaginal lacerations. *Id.* at 228. To rebut the defendant's claim of consent, the prosecution introduced evidence of a similar assault occurring two years earlier. According to this earlier victim and her doctor, the defendant assaulted her in the same way, causing vaginal bruises and a laceration. *Id.*

¶ 23. The Iowa Supreme Court acknowledged *Alsteen* and other cases that "simply reason that consent is unique to the individual." *Id.* at 230. The Court explained, however, that evidence of *modus operandi* may be introduced to rebut a defendant's claim of consent by showing that he " 'has had a *nonconsenting* encounter with another person in this strikingly singular way.' " *Id.* at 231 (quoting *Youngblood v. Sullivan*, 628 P.2d 400, 402 (Or. Ct. App. 1981)).

¶ 24. We agree. Where, as here, a defense of consent is inextricably connected to a defendant's conduct surrounding and including sexual contact, and where other-acts evidence is probative of a *modus*

*operandi* rebutting that defense, *Alsteen* does not preclude an instruction advising the jury that it may consider the evidence on the issue of whether an alleged victim consented to the defendant's conduct.[7]

¶ 25. We also acknowledge that the authorities are divided on this issue.[8] And we recognize that, in this case, the trial court could have accurately instructed the jury without using the words "consent" or "nonconsent." Thus, we go on to explain why, even if we were

---

[7] Ironically, in the instant case, an important *difference* between the two assaults—the gender of the victims—further supports our decision. Mary, a woman, was confronted by Ziebart who sexually assaulted her and, in vigilante fashion, claimed to be ridding the streets of "crack whores," and pretended to be a police officer. Evidence of Ziebart's strikingly similar attack on Daryl, a man, was highly probative. Indeed, the "uniqueness" of non-consent would seem to recede as Ziebart maintained his *modus operandi* regardless of the gender of his victims.

[8] *See* Sheri B. Ross, *Yes or No to Consent? Conforming Rule 404(B) to Society's New Understanding of Acquaintance Rape,* 48 U. MIAMI L. REV. 343, 366–67 (1993) ("Corroborative evidence both reduces the possibility that the victim is lying and increases the probability that the defendant committed the crime . . . . Under this standard, the defendant's prior conduct [of committing sexual assaults] says something about the victim's present conduct—that she is not lying . . . . This inference does not imply that simply because one woman refused, this woman also refused. [Rather,] [i]t is [the defendant's] prior conduct that makes it more likely that she[, the victim here,] did not consent to sexual intercourse."). *But see State v. Mitchell,* 633 N.W.2d 295, 299–300 (Iowa 2001) (concluding that use of other-acts evidence from another victim of child sexual abuse cannot be used to bolster the complainant's credibility and corroborate her testimony); *accord State v. Glodgett,* 749 A.2d 283, 288–89 (N.H. 2000).

troubled by a jury instruction that might seem inconsistent with *Alsteen*, we would conclude that any possible error was harmless.

¶ 26. Where the trial court incorrectly instructs the jury, this court must set aside the verdict unless that error was harmless; that is to say, unless there is no reasonable possibility that the error contributed to the conviction. *State v. Neumann*, 179 Wis. 2d 687, 703, 508 N.W.2d 54 (Ct. App. 1993); *see also* WIS. STAT. 805.18(2).[9] In this inquiry, the State has the burden of establishing, beyond a reasonable doubt, that there is no reasonable possibility that the error contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). An error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *State v. Harvey*, 2002 WI 93, 46, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). This presents a question of law we review *de novo*. *State v. Harris*, 199 Wis. 2d 227, 256–63, 544 N.W.2d 545 (1996). In determining whether an error is harmless, we weigh the effect of the trial courts error against the totality of the credible evidence supporting the verdict. *Id.* at 255.

---

[9] WISCONSIN STAT. § 805.18(2) provides, as material here:

**Mistakes and omissions; harmless error**. No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of . . . misdirection of the jury, or the improper admission of evidence . . . unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

¶ 27. Here, Ziebart could have no complaint if the trial court, instead of instructing the jury that Daryl's testimony could be considered to evaluate consent and non-consent, had simply advised that it could be considered to evaluate credibility. *See State v. Parr*, 182 Wis. 2d 349, 361, 513 N.W.2d 647 (Ct. App. 1994) (other-acts evidence was relevant because it "bore directly on the truthfulness of [the defendant's] and [the victim's] competing and conflicting versions of the event"). And here, consent/non-consent and credibility were virtually interchangeable. The issue simply was whether Mary's account, in her trial testimony, or Ziebart's account, presented to police, was true. That determination reduced to whether Mary consented to Ziebart's actions. Therefore, assuming that the trial court had not uttered the challenged "consent/non-consent" words, the jury, having been properly instructed to determine the credibility of witnesses, *see* Wis JI—Criminal 300, still would have evaluated Daryl's testimony as it bore on Mary's credibility and, perforce, on her declaration of non-consent.

¶ 28. Ziebart maintains that the State's evidence was weak, noting in particular that no witnesses observed grass or mud stains on Mary's shirt and alleging that Mary "refused to cooperate in a sexual assault examination." He fails, however, to acknowledge the ample evidence supporting Mary's account. As noted, Officer Haase testified that Mary was emotionally distraught and physically disheveled when he first came on the scene. Gail Meinzer, the emergency room nurse who first treated Mary, testified that Mary declined an evaluation at the Sexual Assault Treatment Center because she (Mary) believed that no evidence would be recovered because she had engaged in sex acts with

other men earlier in the day. Meinzer also testified that Mary's pants were open at the waist and grass stained at the knees, and that her shirt was open with the buttons off. In addition, Ziebart's statements to police, which changed each time police caught him in a lie, supported many aspects of Mary's version. Thus, the State correctly argues, "[e]ven if part of the limiting instructions were incorrectly given, it is impossible to conclude that if the instruction had been given without the challenged language, the result of the trial would have been different."

¶ 29. Therefore, because the trial court's instruction was correct, and because any possible error in the instruction was harmless when "viewed in the context of the overall" jury instructions, *Pettit*, 171 Wis. 2d at 637, neither trial counsel nor postconviction counsel was ineffective for failing to challenge it.[10]

## B. Postconviction Discovery

¶ 30. Ziebart also argues that the trial court erred in denying his motion for postconviction discovery. In his postconviction motion, Ziebart sought an order requiring the State to disclose "the means by which [Mary's] appearance at trial was accomplished, whether

---

[10] Because Ziebart's challenge to the jury instructions carried us to the case law considering whether an instructional-error is harmless, and because the "test for harmless error" is "essentially consistent with the test for prejudice in an ineffective assistance of counsel claim," *State v. Harvey*, 2002 WI 93, ¶ 41, 254 Wis. 2d 442, 647 N.W.2d 189, we have analyzed his challenge, in part, under harmless-error standards. In doing so, however, we do not mean to ignore "a distinction in the burden of proof: ordinarily, the one who benefits from the error must prove harmlessness, but in an ineffective assistance of counsel claim, the defendant must prove prejudice." *Id.*

she was either housed or held in custody by the [S]tate pending her testimony, and the circumstances of any such housing or incarceration." The motion alleged that an acquaintance of Mary told a defense investigator that he had helped the police locate her at a drug house and that she was in custody during the trial. Ziebart maintains that, because those circumstances might be consequential in providing "grounds on which to exclude or discredit [the victim's] statements and testimony," he was entitled to discover the details.

¶ 31. Denying Ziebart's motion, the postconviction court concluded that Ziebart had failed to make a sufficient showing to gain discovery. It explained:

> In this instance, the defendant has not provided a strong showing of success. In support of his request, Ziebart offers a vague and nebulous assertion made by an acquaintance of the victim long after trial. No particulars are provided and no sworn statement from the acquaintance exists. Even if the court had been provided with a sworn statement, however, [the acquaintance's] statement (*or belief*) that the victim was in "some form of state custody" would be insufficient to demonstrate that postconviction discovery was warranted. No actual factual data is offered; rather, merely the belief of an acquaintance, or perhaps his repetition of something he had possibly heard at one time, is presented. It is an unsubstantiated statement, murky at best, completely insufficient to support a motion for postconviction discovery[.]

¶ 32. A defendant has a right to postconviction discovery if the desired evidence is relevant to an issue of consequence. *State v. O'Brien*, 223 Wis. 2d 303, 321, 588 N.W.2d 8 (1999). Further, a defendant seeking such discovery must establish that the evidence probably would have changed the outcome of the trial. *Id.* "The

mere possibility that an item of undisclosed information might have helped the defense" is not enough. *Id.* We will uphold a court's denial of postconviction discovery absent an erroneous exercise of discretion. *Id.* at 320.

¶ 33. A defendant is not automatically entitled to a hearing on a postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 313, 548 N.W.2d 50 (1996). If a defendant presents only conclusory allegations that fail to raise a question of fact, or if the record conclusively demonstrates that the defendant is not entitled to relief, the court may deny the motion on its face. *Id.* at 309–10. Whether a motion alleges facts warranting relief, thus entitling a defendant to a hearing, is a legal issue we review *de novo. Id.* at 310. If the motion fails to allege sufficient facts, the trial court has discretion to deny the postconviction motion without a hearing, *id.* at 310–11, and this court reviews that denial solely to determine whether the court erroneously exercised discretion, *id.* at 311.

¶ 34. Here, we see no erroneous exercise of discretion. Responding to Ziebart's motion, the State conceded its difficulty in producing Mary but represented that she was never held in state custody or coerced for her testimony. Ziebart offered nothing more than Mary's acquaintance's impression to suggest otherwise. Moreover, as Ziebart concedes in his brief to this court, "the [S]tate, like any party, may use a subpoena or material[-]witness order to coerce a witness to attend the trial and answer questions." Thus, given that the State could have lawfully held Mary in custody to gain her testimony, the details of any such custody could

establish nothing more than the "mere possibility" that such information "might have helped the defense." *See id.*

*By the Court.*—Order affirmed.