COURT OF APPEALS
DECISION
DATED AND FILED

November 24, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1021-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF3151

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RODERICK R. LEBLANC,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

Before Blanchard, Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Roderick R. Leblanc appeals from a judgment of conviction for one count of first-degree reckless homicide by use of a dangerous weapon, contrary to WIS. STAT. §§ 940.02(1) and 939.63(1)(b) (2015-16).[1] Leblanc also appeals from an order denying his postconviction motion without a hearing.  Leblanc argues that he is entitled to a **Machner** hearing on his claims that his trial counsel was ineffective in two ways.  *See State v. Machner*, 92 Wis. 2d 797, 803, 285 N.W.2d 905 (Ct. App. 1979).  We disagree and affirm.

## BACKGROUND

¶2     On July 4, 2015, family and friends gathered at a private residence for a cookout.  One attendee, Mario Dancer, was fatally shot in the head.  The State charged Leblanc with the shooting and the case proceeded to a bench trial.

¶3     No witness at trial testified that he or she saw Leblanc shoot Dancer, but the State introduced circumstantial evidence.  For instance, the victim's father-in-law, James Jones, testified to the following.  As Jones entered the house, Leblanc and Dancer were outside arguing about "which one of them had the best girl."[2]  While Jones was talking to a woman inside the house, "all of a sudden everybody come running through the back door through the house."  Leblanc entered the house and when he did, "[h]e said he [was] going to lay whoever down, he [was] going to lay 'em all down that called him a punk ass [expletive]."

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] We will not attempt to summarize all of the testimony, which the parties discuss at length in their appellate briefs.

Jones also testified that a girl who was "twelve, thirteen, [or] maybe fourteen" said that Leblanc had shot Dancer.[3]

¶4    The State also called Ariel Swenson, who testified to the following. At all pertinent times, Swenson was the girlfriend of Leblanc's brother, Dumar Leblanc (hereafter "Dumar"). When Roderick Leblanc (hereafter "Leblanc") entered the house, he seemed "[h]yped." Leblanc was carrying a gun and said, "Dude thought I was a punk." When Leblanc's girlfriend entered the house, "[s]he was crying and looked very distraught." The woman said, "[H]e's been shot and Rod [Leblanc] shot him." Dumar told a woman who was calling 911 to "tell them it's been a drive-by." Dumar told people not to tell on Leblanc and pushed Jones against the wall after Jones said that "he was going to tell." Swenson acknowledged that Dumar was serving a prison term for threatening Jones.[4]

¶5    Swenson also testified that she told a detective the following about events on the day of the shooting. She saw Leblanc put a gun on a table in the house and remove the magazine from the gun. Leblanc's mother asked Leblanc, "[W]hy did you have to go and do that?"

---

[3] Numerous hearsay statements were admitted as excited utterances. While Leblanc challenged the admission of those statements at trial and in his postconviction motion, he has not pursued that hearsay issue on appeal. Therefore, we do not discuss the admissibility of those statements.

[4] Explaining this reference, in a separate case arising out of the same general incident, Dumar pled guilty to threatening a witness (Jones) and was sentenced to one year of initial confinement and one year of extended supervision. *See State v. Leblanc*, Milwaukee County Circuit Court Case No. 2015CF3152. Leblanc does not raise in this appeal any issue regarding Swenson's testimony about Dumar's conviction.

¶6    The trial court found Leblanc guilty of first-degree reckless homicide by use of a dangerous weapon.  In its oral decision, the trial court provided an assessment of each witness's credibility and made detailed factual findings about what occurred.

¶7    Represented by postconviction counsel, Leblanc filed a motion seeking either acquittal or a new trial on several bases, including ineffective assistance of counsel.[5]    The trial court denied the motion in a written order without granting Leblanc a ***Machner*** hearing.  This appeal follows.

## DISCUSSION

¶8    Leblanc argues that the trial court erroneously denied his motion without granting him a ***Machner*** hearing on his claim that trial counsel performed deficiently in two respects:  (1) when she failed to sufficiently impeach Jones with prior inconsistent statements; and (2) when she failed to object to improper character evidence regarding Leblanc.  Leblanc urges this court to consider the individual and cumulative prejudice of those alleged deficiencies.

¶9    When evaluating claims of ineffective assistance of counsel, this court applies the two-part analysis described in ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).  To establish ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficiency prejudiced his or her defense.  ***Id.***  A court need not address both aspects of the

---

[5] Leblanc has not pursued other issues that he raised in his postconviction motion, such as sufficiency of the evidence.  We deem those issues abandoned.  *See **Reiman Assocs., Inc. v. R/A Advert., Inc.***, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (holding that issues not briefed are deemed abandoned).

*Strickland* test if the defendant does not make a sufficient showing on either one. *Id.* at 697.

¶10 To demonstrate that counsel's performance was deficient, the defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of professionally competent assistance." *Id.* at 690. To show prejudice, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶11 On appeal, our review of a claim of ineffective assistance of counsel presents a mixed question of fact and law. *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. We will uphold the postconviction court's factual findings unless they are clearly erroneous, but we review *de novo* the question of "[w]hether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel." *Id.*

¶12 A trial court has discretion to deny a postconviction motion without an evidentiary hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. On appeal, we independently review whether a postconviction motion raised sufficient facts so as to require a *Machner* hearing. *See Allen*, 274 Wis. 2d 568, ¶9.

¶13 With those standards in mind, we turn to Leblanc's two ineffective assistance claims.

**I. Impeachment of Jones**

¶14    In his postconviction motion, Leblanc argued that trial counsel provided ineffective assistance by "failing to impeach [Jones] with his prior inconsistent statements." (Italics omitted.) Leblanc identified four ways that Jones's trial testimony differed from the statements he gave to the police an hour after the shooting and the day after the shooting.

¶15    First, Leblanc asserted that Jones never told the police that he heard Leblanc implicate himself by saying that he was "going to lay 'em all down." Second, Jones did not tell the police that he heard a girl say that Leblanc shot Dancer. Third, when Jones was interviewed for the second time, he said that "Dumar kept grabbing [Jones's] throat until … [Swenson] convinced [Dumar] to let go and then leave the party." However, when trial counsel asked Jones about this at trial, Jones said that Swenson "wasn't even in the house." Finally, Leblanc asserted that, although Jones told the police that "it did not look as if there was an argument" between Leblanc and Dancer, Jones testified at trial that he told Leblanc and Dancer, "[Y]ou all need to stop arguing and talking about who's got what. Both of you all's broke."

¶16    In its order denying Leblanc's postconviction motion, the trial court concluded that "[m]ore probing of the inconsistent statements made by [Jones] would not have produced a different result." Having reviewed Jones's testimony in its entirety, as well as the trial court's findings at the close of the trial, we reach the following conclusion. Assuming without deciding that trial counsel was deficient in the degree to which she attempted to impeach Jones, the record conclusively establishes there is not a reasonable probability that, but for this performance, the result of the proceeding would have been different.

¶17 Trial counsel, as well as the State, questioned Jones about what he told the police. For instance, when the State asked Leblanc why he did not mention Dumar attacking him when he spoke to the first officer, Leblanc stated: "It just slipped my mind. It was so much going on." Further, after testifying that he told the police about the girl who said Leblanc shot the victim, Jones acknowledged that he may not have related this to police, explaining, "Could have been, because you guys ask me a million questions, man. I didn't know what was going on." In addition, trial counsel did, in fact, ask Jones whether he told the police that Dumar stopped grabbing Jones's neck after Swenson told Dumar to stop; his response that she was not in the house revealed an inconsistency. Finally, Jones described the interaction between Leblanc and Dancer in a variety of ways, including testifying at one point that he thought at the time that the two were merely acting the way they often did when together, and Jones "didn't think nothing serious about it."

¶18 Trial counsel did not raise every possible inconsistency with Jones. However, she did highlight significant inconsistencies, which the trial court considered and discussed at the conclusion of the trial. The trial court ultimately found Jones believable, stating:

> [Jones's] testimony is offered by the State largely to explain a motive behind the shooting that's taken place. I think Mr. Jones is credible and worthy of belief....
>
> There are moments when he's tough to understand because of his speech pattern and because of the language that he uses…. He readily concedes that there were things that he didn't mention the first time he was interviewed. He doesn't say in that first interview at the scene that he was assaulted by or threatened by Dumar. He later clarifies that in a subsequent statement at his house.
>
> There were some gaps in his memory. They don't seem inappropriate, though. They seem natural gaps that

one would expect with the passage of time. He's fairly unsophisticated.

Given the trial court's assessment that Jones was a credible witness—despite some inconsistencies and gaps in Jones's memory—we are not persuaded that trial counsel's failure to impeach Jones with additional inconsistencies was prejudicial. Assuming that counsel could have conducted some additional meaningful cross-examination about the inconsistencies beyond what she did accomplish, this would not have changed the trial court's credibility assessment and its conclusion that Jones's testimony and the testimony of the other witnesses provided sufficient evidence of Leblanc's guilt. Therefore, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Because the record conclusively establishes that Leblanc was not prejudiced, he was not entitled to a *Machner* hearing to attempt to establish that trial counsel performed deficiently. *See Strickland*, 466 U.S. at 697; *Allen*, 274 Wis. 2d 568, ¶9. Leblanc fails to direct us to any potential evidence that he could present or elicit at an evidentiary hearing that could make a difference to the prejudice analysis.

## II. Introduction of Character Evidence

¶19 In his postconviction motion, Leblanc argued that his trial counsel was deficient because she failed to object to what he termed "improper and irrelevant character evidence" about himself. (Italics omitted.) Leblanc was referring to testimony from a detective who interviewed a member of Leblanc's extended family. The detective testified that the woman said that Leblanc "drinks Bacardi Limon in excess, and when he gets drunk, that he overreacts and takes things—'Blows things way out of proportion,' I believe was her exact words."

Leblanc argued that the detective's testimony was improper under WIS. STAT. § 904.04 and that trial counsel should have objected to it.

¶20    In response, the State argued that the testimony was properly admitted because it was offered to rebut testimony about Leblanc from Leblanc's cousin, which was introduced during trial counsel's cross-examination of the cousin. *See* WIS. STAT. § 904.04(1)(a) (providing an exception to the general rule against character evidence that allows the prosecution to rebut "[e]vidence of a pertinent trait of the accused's character offered by an accused").  Leblanc's cousin testified in pertinent part as follows, with emphasis added on the most important components:

> [Trial counsel]:  So have you ever seen [Leblanc] with a gun?
>
> [Witness]:  No.
>
> [Trial counsel]:  Is he a person who carries a gun?
>
> [Witness]:  No.
>
> *[Trial counsel]:  Is [he] a brawler?*
>
> *[Witness]:  No.*
>
> *[Trial counsel]:  Does he get into it with people?*
>
> *[Witness]:  No.*
>
> [Trial counsel]:  You ever seen him in a big fight where —
>
> [Witness]:  No.
>
> [Trial counsel]:  — there are guns involved?
>
> [Witness]:  Nope.

¶21 In its order denying the postconviction motion, the trial court agreed that the rebuttal testimony was "fair game as argued by the State and used to rebut the defendant's attempt to show his peaceful character."

¶22 We agree with the trial court. The defense elicited testimony suggesting that Leblanc was not "a brawler" and not likely to "get into it with people." Testimony that when Leblanc gets drunk he "overreacts" and "[b]lows things way out of proportion" rebuts that testimony. The topic is whether Leblanc has a character trait for nonviolence, and it is a reasonable inference that one who "[b]lows things way out of proportion" when drunk does not have such a character trait. We are not persuaded that the rebuttal evidence concerning "a pertinent trait" of Leblanc's character was improper or that the trial court would have sustained an objection to that testimony. *See* WIS. STAT. § 904.04(1)(a); ***State v. Brecht***, 143 Wis. 2d 297, 322-23, 421 N.W.2d 96 (1988) (under § 904.04(1)(a), after defense introduces evidence attempting to show defendant's "character for nonviolence," the prosecution may introduce rebuttal evidence on this topic). Therefore, Leblanc has not shown that trial counsel was deficient for failing to object or that Leblanc was prejudiced by that alleged deficiency. *See **State v. Ziebart***, 2003 WI App 258, ¶14, 268 Wis. 2d 468, 673 N.W.2d 369 (holding that "[a] failure to challenge a *correct* trial court ruling cannot establish" either deficiency or prejudice under the ***Strickland*** test). Because the record "conclusively demonstrate[d]" that Leblanc was not entitled to relief, the trial court had discretion to deny Leblanc's motion without an evidentiary hearing, *see **Allen***, 274 Wis. 2d 568, ¶9, and we discern no erroneous exercise of discretion.

¶23 Finally, because we have rejected Leblanc's second claim of ineffective assistance based on the absence of deficient performance, there could be no merit to his cumulative prejudice claim. *See **Thiel***, 264 Wis. 2d 571, ¶59

10

(recognizing that appellate courts will analyze a cumulative prejudice claim when there have been "multiple instances of deficient performance by counsel").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.