**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 7, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2307**

**STATE OF WISCONSIN**

Cir. Ct. No. **2005CF5586**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SAMUEL D. WHITE,

DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed in part; dismissed in part.*

Before Dugan, Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Samuel D. White appeals an order of the circuit court denying his WIS. STAT. § 974.06 (2019-20)[1] motion.  We affirm.[2]

¶2     In 2006, White was convicted after a jury trial of four counts: (1) first-degree intentional homicide while armed; (2) attempted first-degree intentional homicide while armed; (3) felon in possession of a firearm; and (4) second-degree reckless injury while armed.

¶3     At trial, the State argued that on September 20, 2005, White shot and wounded Adam, and five days later, on September 25, 2005, White shot and killed Adam and wounded Lincoln.[3]  The State called a number of witnesses, including Detective Scott Gastrow, who interviewed White after he was arrested.

¶4     Detective Gastrow testified that the first time he spoke to White, White denied involvement in both shootings.  During a second interview, White admitted his involvement in the first shooting, but denied involvement in the

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] White also appeals an order denying a motion for reconsideration.  The State argues that White's motion for reconsideration is not appealable because it did not raise a new issue.  *See Silverton Enters. Inc. v. General Cas. Co. of Wis.*, 143 Wis. 2d 661, 665, 422 N.W.2d 154 (Ct. App. 1988) (stating that "[n]o right to appeal exists from an order denying a motion to reconsider which presents the same issues as those determined in the order or judgment sought to be reconsidered").  We agree with the State and, thus, confine our review to the order denying the WIS. STAT. § 974.06 motion.  White's motion for reconsideration merely rehashed his ineffective assistance of counsel and newly discovered evidence claims with additional detail.  White's motion for reconsideration did not allege newly discovered evidence or that the circuit court committed a manifest error of law or fact.  *See Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853.  Accordingly, White's appeal from the order denying his motion for reconsideration is dismissed.

[3] The State's brief uses pseudonyms for the two victims.  For ease of reading, we adopt these pseudonyms.

second shooting. Subsequently, White admitted that he was involved in both shootings.

¶5     According to Detective Gastrow, White stated that after the first shooting, he kept hearing from people in the neighborhood that Adam and his friends were looking for him and they had guns. Then, on September 22, White stated that he saw Adam and Lincoln in a car and shots were fired at him. White felt that "it was going to be them or me." On September 25, White received a call that Adam and Lincoln were at a bar. White confessed that he went to the bar with a gun and waited outside for Adam and Lincoln. White pulled a "black transparent hair net" over his face to avoid being identified. After Adam and Lincoln exited the bar, White jumped out and started shooting at them.

¶6     White took the stand and admitted that on September 20, after a dice game, he shot Adam. White admitted he had pulled out a gun, the two of them tussled with it, and White pulled the trigger. White also testified that after the shooting, he tried to prevent the situation from escalating, but Adam was not interested in making peace.

¶7     With respect to the second shooting on September 25, White denied his involvement on the stand. This contradicted the testimony of the State's witnesses, Lincoln and Brandon Williams, who both identified White as the shooter at the second shooting.

¶8     In closing argument, consistent with White's testimony, trial counsel acknowledged White's involvement in the first shooting, but argued that White was not present at the second shooting. Trial counsel challenged the eyewitnesses' identification of White as the shooter and the reliability of White's confession.

¶9　After his conviction, White pursued a direct appeal. On February 1, 2007, White filed a postconviction motion for a new sentencing hearing based on inaccurate information, which the circuit court denied without a hearing. On that same date, White sent a letter to the circuit court, apologizing for wasting its time with his "claims of innocence" and "continued lies[.]" He stated that "[t]he confession I made was true with the exception of my attempt to protect other parties that was involved." White explained that "[f]rom the day I turned myself in I wrestled back and forth with coming clean and keeping silent. The day after my confession I spoke to my brother who successfully convinced me to take the case to trial anyway."

¶10　After the circuit court denied his resentencing motion, White appealed to this court, arguing that the circuit court should have suppressed the statements he made to the police because they were involuntary. This court affirmed White's conviction. *State v. White*, No. 2007AP904-CR, unpublished op. and order (WI App Jan. 7, 2008).

¶11　In 2009, White filed a *pro se **Knight***[4] petition alleging ineffective assistance of appellate counsel. This court rejected White's claims that appellate counsel performed deficiently with respect to several issues, including jury selection and the voluntariness of his confession. *State ex rel. White v. Pollard*, No. 2009AP1400-W, unpublished op. and order (WI App Apr. 12, 2010).[5]

---

[4] *See **State v. Knight***, 168 Wis. 2d 509, 484 N.W.2d 540 (1992).

[5] In 2009, White also filed a motion to vacate the DNA surcharge in the circuit court, which was granted.

4

¶12    In 2010, White filed a motion for postconviction DNA testing of a black nylon stocking found in his car that was introduced at trial. The motion argued that White "intends to prove that his DNA was not left on this mask, and in fact that someone else's DNA is on this mask." The circuit court denied the motion, and this court affirmed. *State v. White*, No. 2010AP2544-CR, unpublished op. and order (WI App Mar. 29, 2012).

¶13    In 2019, White filed the WIS. STAT. § 974.06 motion that forms the basis for this appeal. In his motion, White alleged that his postconviction counsel was ineffective for failing to assert a claim of ineffective assistance of trial counsel. According to White, trial counsel should have raised a mitigating defense of imperfect self-defense in regards to the second shooting and interviewed and called witnesses who would have supported this claim. The motion also alleged that newly discovered evidence existed that would have supported White's imperfect self-defense theory. White filed several affidavits in support.

¶14    The circuit court denied White's postconviction motion without a hearing. In light of White's denial on the stand that he was involved in the second shooting, the circuit court concluded it was unreasonable to expect trial counsel to offer a defense of imperfect self-defense. Further, based on its assessment of the evidence, the circuit court determined that there was no reasonable probability that a jury looking at both the trial evidence and the new evidence would have found White was in imminent danger of death or great bodily harm or that deadly force was necessary to protect himself. Finally, the circuit court determined that the issues White raised in his motion were not clearly stronger than those raised in the prior appeal.

¶15 On appeal, as in the circuit court, White argues that he is entitled to a hearing on his ineffective assistance of counsel claims and his newly discovered evidence claims. Additional relevant facts are referenced below.

## DISCUSSION

¶16 WISCONSIN STAT. § 974.06 provides a mechanism for prisoners to raise constitutional claims after the time for a direct appeal has expired. A defendant seeking relief under § 974.06 has the burden of showing "the need for a postconviction evidentiary hearing with a clearly articulated justification." *State v. McAlister*, 2018 WI 34, ¶28, 380 Wis. 2d 684, 911 N.W.2d 77.

¶17 A circuit court is required to hold an evidentiary hearing on a motion only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether a defendant's motion has alleged sufficient material facts entitling the defendant to relief is a question of law that we review *de novo*. *Id.*, ¶9. If the motion raises sufficient facts, the circuit court must hold an evidentiary hearing. *Id.*

¶18 If the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.* We review this decision under the deferential erroneous exercise of discretion standard. *Id.*

¶19 As discussed below, we conclude that White's WIS. STAT. § 974.06 motion was properly denied without a hearing.

## I.  White is not entitled to an evidentiary hearing based on ineffective assistance of counsel.

¶20   To prevail on a claim of ineffective assistance of counsel, the defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance.  ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).  To satisfy the prejudice prong, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  ***Id.*** at 694.

¶21   When a claim of ineffective postconviction counsel is based on the failure to raise ineffective assistance of trial counsel, the defendant must show that trial counsel was ineffective.  ***State v. Ziebart***, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369.  If trial counsel was not ineffective, then postconviction counsel was not ineffective for failing to challenge the trial attorney's performance.  *See **id.***[6]

¶22   According to White, trial counsel should have investigated and presented a mitigating defense of imperfect self-defense in regard to the first-degree intentional homicide charge.  White claims that two witnesses, Marcus Young and Calvin Graham, would have testified to Adam's reputation for

---

[6] Wisconsin law also requires that a defendant alleging ineffective assistance of postconviction counsel in a WIS. STAT. § 974.06 motion demonstrate that his claims are "clearly stronger" than the postconviction claims actually brought.  *See **State v. Romero-Georgana***, 2014 WI 83, ¶4, 360 Wis. 2d 522, 849 N.W.2d 668.  Because we conclude that trial counsel was not ineffective and, thus, postconviction counsel was not ineffective, we do not address this requirement.  *See **State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

violence, that Adam was seeking revenge on White, and that White had attempted to seek peace. White asserts that he provided this information to both trial counsel and postconviction counsel.

¶23 We disagree with White that trial counsel was ineffective. To start, at trial, White chose to exercise his right to testify, and then chose to testify falsely, which he did not have a right to do. *See Nix v. Whiteside*, 475 U.S. 157, 173 (1986) (holding that the right to testify does not extend to testifying falsely).[7] Based on White's denial of his involvement in the second shooting on the stand, there were no grounds for trial counsel to argue self-defense or request an instruction. In fact, if trial counsel had conceded White's involvement in the September 25 shooting despite White's express assertion of innocence, this could have resulted in a constitutional violation. *See McCoy v. Louisiana*, 584 U.S. ___, 138 S. Ct. 1500, 1505 (2018) (holding that a trial attorney's decision to concede guilt over the objection of the defendant was a violation of the Sixth Amendment).

¶24 Moreover, even if White had admitted his involvement in the September 25 shooting on the stand, his statements do not meet the criteria for imperfect self-defense. Imperfect self-defense applies where

> a person intentionally caused a death but did so because [he] had an actual belief that [he] was in imminent danger of death or great bodily harm and an actual belief that the deadly force [he] used was necessary to defend [him] against this danger, if either of these beliefs was not reasonable.

---

[7] White does not allege that trial counsel forced him to testify falsify. Prior to White's testimony, the circuit court specifically confirmed that White's decision to testify was voluntary and White made the decision himself. Additionally, White's 2007 letter to the circuit court supports that it was White's own decision to claim innocence and go to trial.

*State v. Head*, 2002 WI 99, ¶69, 255 Wis. 2d 194, 648 N.W.2d 413 (emphasis omitted); *see also*, WIS. STAT. § 940.01(2)(b). If these circumstances are met, the crime of first-degree intentional homicide is mitigated to second-degree intentional homicide. *Head*, 255 Wis. 2d 194, ¶69.

¶25 As the circuit court observed, the facts here do not establish that White was acting in self-defense. Although White's statements to the police and his WIS. STAT. § 974.06 motion suggest that he believed that Adam posed a danger to him, his statements do not demonstrate that he believed Adam presented an *imminent* danger of death or great bodily harm to him on September 25, 2005. As the State observes, this court has defined "imminent" in a different context as "ready to take place, near at hand, impending, or menacingly near." *See State v. McCoy*, 139 Wis. 2d 291, 296, 407 N.W.2d 319 (Ct. App. 1987), *aff'd*, 143 Wis. 2d 274, 421 N.W.2d 107 (1988) (citing *Webster's Third New International Dictionary* 1130 (1976)).

¶26 According to White's statements to the police and the affidavit he submitted with his WIS. STAT. § 974.06 motion, on September 25, he received a call from Young telling him that Adam was at a bar and warning him "to be careful[.]" Instead of avoiding the bar, White went to the bar and waited outside with a gun. When Adam came outside, White "knew [he] couldn't let him get close because he would try to take the gun again." White "jumped out, stood back, and shot [Adam] two times and shot [Lincoln] two times and ran off." Nothing in White's statements suggest that Adam posed an imminent danger to him on September 25. White does not indicate that Adam or Lincoln were aware of his presence. Nor does White indicate that Adam or Lincoln had a gun.

9

¶27 White contends that this case is similar to **Head**, 255 Wis. 2d 194. But, White's situation is nothing like that in **Head**. In **Head**, the defendant was convicted of first-degree intentional homicide for shooting and killing her husband. **Id.**, ¶1. On the day of the shooting, the defendant stated that her husband had been yelling at her and said "'[m]aybe I should just take care of you guys and get on with my life,'" which she understood to be a threat to kill her and another person that he had previously threatened to kill. **Id.**, ¶¶11-19. Her husband then clenched his fists, threw back the covers, and rolled across the bed "'like he was going to reach for something.'" **Id.**, ¶16. The defendant thought he was going for a gun that was located near her, so she grabbed the gun and reacted to protect herself. **Id.**, ¶¶16-17. Based on these facts, the court held that the defendant was entitled to a jury instruction on imperfect self-defense. **Id.**, ¶7.

¶28 Here, as stated above, there is no evidence that Adam or Lincoln knew of White's presence on September 25 before he started shooting or that they engaged in any actual confrontation with White. Thus, **Head** does not support White's argument.

¶29 Therefore, trial counsel was not ineffective for failing to pursue imperfect self-defense, and postconviction counsel was not ineffective for failing to challenge trial counsel's performance. If trial counsel had requested an imperfect self-defense instruction, it would have been denied. *See State v. Reynolds*, 206 Wis. 2d 356, 369, 557 N.W.2d 821 (Ct. App. 1996) (stating that the failure to file a motion that would be denied under the facts and applicable law cannot be either deficient performance or prejudicial).

¶30    Accordingly, we conclude that White has failed to allege sufficient facts in his motion to warrant a hearing on ineffective assistance of counsel and the circuit court properly denied his motion.

## II.    White is not entitled to an evidentiary hearing on newly discovered evidence.

¶31    To obtain a hearing based on newly discovered evidence "a defendant must prove:  (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative."  *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted).  If the defendant satisfies his burden on all four of these elements, the circuit court must then determine whether a reasonable probability exists that a different result would be reached at trial.  *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted).  "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt."  *Id.*

¶32    In addition, a newly-discovered evidence claim "based on recantation also requires corroboration of the recantation with additional newly discovered evidence."  *McAlister*, 380 Wis. 2d 684, ¶33.  To satisfy the corroboration requirement, the defendant must demonstrate both a feasible motive for the false statement and circumstantial guarantees of the recantation's trustworthiness. *Id.* (citation omitted).

¶33    White argues that statements from Foster and Hudson constitute newly discovered evidence and entitle him to a hearing.  We disagree.  Even if we assume, without deciding, that Foster's and Hudson's statements meet the criteria

for newly discovered evidence, there is no reasonable probability that a jury looking at both the old evidence and the new evidence would have a reasonable doubt as to White's guilt. *Avery*, 345 Wis. 2d 407, ¶25.

¶34    Foster's statement claims that he was present during the dice game on September 20 when White and Adam got into an argument.  Foster indicates that Adam punched White in the face and White left.  White later returned looking for Adam.  Not long after, Adam returned in a van.  As White approached, Adam got out of the van, Adam and White "look[ed] like they [were] wrestling," and Foster heard "a shot go off."  Adam then got back into the van, and as he drove away he yelled, "It's on now! Watch yo' back!"  The day after the shooting, Foster saw Adam and Lincoln riding around looking for White.

¶35    Hudson's statement claims that on September 22, he saw Adam and Lincoln in a car from which shots were fired in White's direction.

¶36    The jury, however, heard all this information.  Although the State's witnesses did not indicate that a dice game started the argument, the State's witnesses testified that, on September 20, Adam arrived in a van, White was holding a firearm when he approached Adam, White and Adam fought over the gun, White pulled the trigger, Adam was shot, and Adam drove away.  Similarly, White testified that he argued with Adam during a dice game, Adam hit him, and White left.  White then obtained a gun, returned to the area where they were playing dice, and shortly after, Adam pulled up in a van.  White approached Adam as he was getting out of the van, they tussled with the gun, and White pulled the trigger.

¶37    Moreover, the jury heard that a woman, Marjorie Reese, told an officer that she saw Adam exit a van with a gun hours after the September 20

shooting and ask "where the [pejorative] at" and that he "was going to get them [pejorative]." In addition, the jury knew from White's statement to police that a car with Adam and Lincoln had shot at him on September 22, that Adam was looking for White so he could kill him, and that White felt he had to kill Adam before Adam killed him.

¶38 Finally, and most significantly, neither Foster nor Hudson witnessed the September 25 shooting. And, as discussed above, White's current version of events would not have supported a defense or instruction on imperfect self-defense on the first-degree intentional homicide charge.

¶39 Therefore, there is no reasonable probability that a jury looking at both the old evidence and the new evidence would have a reasonable doubt as to White's guilt as to either the first shooting or the second shooting. *See id.* Accordingly, we conclude that White has failed to allege sufficient facts in his motion to warrant a hearing on newly discovered evidence and the circuit court properly denied his motion.

*By the Court.*—Order affirmed; order dismissed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.